## WESTERN SECURITIES CO. v. SPIRO.

No. 4023.   Decided December 12, 1923.   (221 Pac. 856.)

1. APPEAL AND ERROR—ASSIGNMENTS RELATING TO FINDINGS OF FACT HELD INSUFFICIENT. Assignments of error, assailing findings of fact on the ground the court erred in arriving at its conclusions, but not stating that the court erred by reason of insufficiency of evidence, or in what particulars it was insufficient, *held* insufficient.

2. TRIAL—CONCLUSIONS OF COURT NOT ASSAILABLE, IF FACTS FOUND JUSTIFY THEM. The conclusions of law are deduced from the findings of fact, and, if the facts found justify the court's conclusions when considered in the light of the law applicable to the facts, the conclusions are invulnerable.

3. APPEAL AND ERROR—WHEN ASSIGNMENTS THAT JUDGMENT NOT SUPPORTED BY EVIDENCE INSUFFICIENT. The judgment rests

upon the findings of fact and conclusions of law, and when it is not pointed out wherein the evidence is insufficient to support the findings, and the findings are sufficient to support the judgment, assignments that the judgment is not supported by the evidence in certain particulars are insufficient.

4. APPEAL AND ERROR—FINDINGS SUPPORTED BY EVIDENCE NOT DISTURBED. Where there was evidence to support finding that plaintiff corporation was organized by an individual for the transaction of his personal business, and that he was the real party in interest in certain transactions, the Supreme Court cannot interfere.

5. CORPORATIONS—WHEN CORPORATE ENTITY MAY BE DISREGARDED STATED. A corporate entity may be entirely disregarded in order to reach and protect the real parties in interest, and to disclose the real transaction.

6. SET-OFF AND COUNTERCLAIM—WHERE INCORPORATOR AND NOT PLAINTIFF CORPORATION WAS REAL PARTY IN INTEREST, NOTE EXECUTED BY HIM HELD PROPER COUNTERCLAIM OR SET-OFF. Where a corporation, seeking to recover on account and on a promissory note, was organized by C. for the transaction of his personal business, and the dealings and transactions involved were between defendant and C., who was the real party in interest, note given by C. to defendant in the course of such dealings *held* proper subject of counterclaim or set-off.

7. APPEAL AND ERROR—WHEN ADMISSION OF INCOMPETENT EVIDENCE IN CAUSE TRIED TO COURT DOES NOT REQUIRE REVERSAL STATED. Where a cause is tried to a court without a jury, the mere fact that incompetent evidence is admitted does not require reversal, if there is sufficient competent evidence to support the finding respecting a material issue.[1]

8. PRINCIPAL AND AGENT—NATURE OF EVIDENCE ADMISSIBLE ON ISSUE WHETHER ALLEGED AGENT IS REAL PARTY IN INTEREST STATED. Where the issue is whether an alleged agent is the real party in interest as respects right to counterclaim, all the facts and circumstances showing the relation of the parties and their treatment of each other and throwing light upon the character of such relation are admissible.

9. APPEAL AND ERROR—ADMISSION OF WITNESS' DECLARATIONS RESPECTING HIS RELATION TO PLAINTIFF HELD NOT REVERSIBLE ERROR IN CASE TRIED WITHOUT JURY. In an action by a corporation tried without a jury, in which defendant alleged C. was

[1] *Spratt* v. *Paulson*, 49 Utah, 9, 161 Pac. 1120.

the sole owner of the corporation and the real party in interest, and set up a counterclaim against him, admission of C.'s declarations *held* not to require reversal; there being other independent competent evidence of C.'s relations to plaintiff.

10. EVIDENCE—WHEN STATEMENTS OF ALLEGED AGENT ADMISSIBLE AGAINST ALLEGED PRINCIPAL STATED.    Statements of alleged agent, made under circumstances showing the principal assented to them, are admissible in evidence against the alleged principal.

11. FRAUDS, STATUTE OF—STATUTE HELD NOT APPLICABLE TO EXECUTED ORAL AGREEMENT.    Where an oral agreement by C. to sell stock and divide the profits with defendant was fully executed, and C. had received and retained the fruits of the transaction, the statute *held* not to apply or shield C. from accounting to defendant for his share of profits.

12. FRAUDS, STATUTE OF—ORAL AGREEMENT TO SHARE PROFITS FROM SALE OF STOCK HELD NOT A SALE.    An oral agreement by C. to sell stock, which he had previously contracted to purchase from defendant, and divide the net profits with defendant, *held* not a sale, and hence the statute of frauds did not apply..

13. BILLS AND NOTES—CREDITOR'S USE OF DEBT TO PAY THIRD PERSON'S DEBT TO DEBTOR A CONSIDERATION FOR THE THIRD PERSON'S NOTE, THOUGH DEBTOR HAD DEFENSE.    Where C. was indebted for assessments on stock to a mining company, which was indebted to defendant, and defendant applied the debt due him to the payment of such assessments, C.'s note to defendant was not without consideration, and C. could not question defendant's claim against the mining company, where the company never questioned it, even if the company had a good defense.

14. JOINT ADVENTURES—FIDUCIARY RELATION TO COMPANY TO WHOM STOCK SOLD HELD NO DEFENSE AGAINST PAYMENT OF SHARE OF PROFITS AS AGREED.    Assuming that, because of the fiduciary relation existing between defendant and a mining company, defendant would not, as against the company, be entitled to a share of profits realized by C. in a sale of defendant's stock to the company pursuant to an agreement between C. and defendant, such fact *held* no defense available to C. to defeat recovery by defendant of his share of the profits.

15. APPEAL AND ERROR—TRIAL—FINDING THAT NOTE WAS VALID AND SUBSISTING OBLIGATION HELD TO INCLUDE FINDING OF VALUABLE CONSIDERATION.    A finding that a note constituted a valid and subsisting obligation due defendant necessarily included a finding that it was given for a valuable consideration, so that if

the trial court erred in failing to make a finding that the note was given for a valuable consideration, such error was harmless.[2]

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown*, Judge.

Action by the Western Securities Company against Solon Spiro. From a judgment for defendant, plaintiff appeals.

AFFIRMED.

*Walton & Walton* and *Dey, Hoppaugh & Mark*, all of Salt Lake City, for appellant.

*Marshall, Macmillan & Crow*, of Salt Lake City, for respondent.

FRICK, J.

The Western Securities Company, a corporation, hereinafter called plaintiff, sued the defendant in the district court of Salt Lake county to recover upon two causes of action. The first cause of action was based upon an open account, and the second upon a promissory note.

The defendant, in addition to other defenses, set up a counterclaim and cross-demands, which he alleged should be set off against any amount that should be found due, if any, on either or both of plaintiff's causes of action. The cross-demands were, however, preferred against one H. P. Clark, who, the defendant averred, was the real party in interest, and that the claims of the plaintiff arose out of transactions had between the defendant and said Clark, and not between the plaintiff and defendant, although many of the transactions were executed in the corporate name of the plaintiff. The plaintiff filed a reply, in which it denied defendant's version of the

[2] *Skliris* v. *Melis*, 51 Utah, 391, 170 Pac. 968; *I. X L. Stores Co.* v. *Moon*, 49 Utah, 262, 162 Pac. 622; *Munsee* v. *McKellar*, 39 Utah, 282, 116 Pac. 1024.

transactions, and in an amendment to the reply also averred that a certain note which was set up as a cross-demand by defendant was without consideration.

The case was tried to the court as an action at law. In view that the findings of the court fairly reflect the pleadings and the evidence, except as hereinafter pointed out, and in view of the nature of the questions presented for decision, we shall set forth the findings somewhat fully. In view, however, that the findings of fact and the evidence are not fully reflected in the abstract, we have had recourse to the original bill of exceptions, and therefore, in so far as reference is made herein to the findings or the evidence, such reference is to the original findings as they are found in the bill of exceptions.

So far as possible we condense the court's findings. It found that one H. P. Clark of Salt Lake City "procured to be organized the plaintiff organization" with a nominal capital stock of $100,000, divided into 1,000 shares; that said Clark subscribed for 990 shares, and two others who are named subscribed for 5 shares each; that neither of the other two subscribers "ever had any interest in said corporation or in the organization thereof, and never paid anything whatever upon their subscriptions, * * * but simply allowed the use of their names, and signed the articles of incorporation to oblige said Clark, and enable him to incorporate the plaintiff corporation; that said corporation was procured to be organized by said Clark for the purpose of the transaction of his personal business under the name of Western Securities Company whenever his interest, convenience, or inclination prompted him to do so, * * * and said Clark has, ever since the organization of said corporation, owned and controlled the same, and has frequently assumed and used the name Western Securities Company in the transaction of his own personal affairs"; that prior to the agreements and transactions set forth in the complaint and in the defendant's answer, "said Clark informed the defendant that said Clark for business reasons had assumed, and was then using, the Western Securities Company as the name by which said Clark would frequently be known in his personal dealings and transactions with defendant, and that at the time of the dealings

and transactions set forth in the answer, where the name Western Securities Company was used, the plaintiff and said Clark represented to defendant that the name Western Securities Company was being used as an assumed name by said Clark in those particular dealings and transactions and each of them, and it was understood and agreed by and between plaintiff and defendant and said Clark that, although such dealings and transactions were in form dealings and transactions between said Western Securities Company and the defendant, they were, nevertheless, in fact dealings and transactions between said Clark and the defendant''; that in said dealings and transactions said Clark was in fact the real party in interest, and the defendant treated all of the dealings and agreements made in the name of the Western Securities Company and involved in this action as the personal dealings and agreements of said Clark; that during the years in which the transactions and dealings involved in this proceeding were had, large amounts of money were required for the purchase of mining stocks by both said Clark and the defendant; that said Clark during said time was engaged in the banking business, and was president of a bank in Salt Lake City, "and did not desire it to be generally known that he was speculating largely in mining stocks, and in the dealings between said Clark and defendant in the matter of their joint speculations in the purchase and sale of mining stocks, and in the matter of borrowing money by one from the other, and in paying out or advancing money by one for the other, and in their written agreements concerning such transactions, the said Clark quite generally assumed and used the name of the Western Securities Company," and in that way and name entered into contracts with the defendant and others; "that this action was brought and prosecuted by said Clark in his own interest and behalf," and said Clark and not the plaintiff is the real party in interest; that said Clark, between certain stated dates, paid out on behalf of the defendant different sums of money, which in the aggregate amounted to the sum of $21,776.80, on which there was paid and credited at the commencement of this action the sum of $5,121.42, leaving an unpaid balance, which, with interest "to this date," amounts to $25,960.49; that all

items paid out by said Clark, whether made in his name or
in the name of plaintiff, ''were in fact made by and on behalf
of said Clark''; that on the 21st day of October, 1911, the
defendant executed and delivered his promissory note for
$1,000, payable to the order of the plaintiff; that nothing has
been paid on said note which, with interest ''at the present
time,'' amounts to $1,643.22; that said note, although payable
to the order of the plaintiff, was in fact ''made to, owned,
and held by said Clark''; that the amount ''unpaid on the
money paid out and advanced for the defendant,'' with in-
terest, including the said note, on ''January 19, 1918,''
amounted to the sum of $23,481.92, which, with interest ''to
the present time,'' amounts to $27,603.71; that on December
21, 1911, said Clark executed and delivered his promissory
note payable June 21, 1912, to the order of the defendant for
the sum of $5,012.10; that no part of said note was paid at
the time this action was commenced, and said note, with ac-
crued interest ''at the present time'' amounts to $8,001.22;
that the defendant owned a certain option for the purchase
of certain mining stocks, on which he had paid the sum of
$2,000, and had agreed to pay for said stock the further sum
of $27,475.60; that in addition to the $2,000 paid as afore-
said, defendant also had expended and paid out the sum of
$563.26 on said option; that on the 3d day of January, 1912,
the defendant and said Clark entered into a certain agree-
ment in writing (which is fully set forth in the findings), in
which agreement Clark, in the name of plaintiff, agreed to
pay 40 cents a share for the stock upon which the defendant
had the option as aforesaid upon the terms and conditions
stated in said agreement; that the defendant and said Clark
subsequently ''entered into a supplemental oral agreement
with respect to said option, by the terms of which it was
mutually understood and agreed that said Clark would sell
said shares of stock to the best advantage, and from the pro-
ceeds thereof would pay'' to the original owners of the stock
the balance due on defendant's option, and would also re-
imburse the defendant for the amounts paid by him on said
option, ''and in addition thereto pay the said defendant one-
half of all of the net profits received by said Clark as a result

of said sale''; that thereafter said Clark, acting under said
oral agreement, sold all of said stock, and received therefor
the sum of $50,000 in cash, ''and thereby derived a net profit
on said transaction of $19,961.74, one-half of which, or the
sum of $9,980.87, was to be paid to the defendant''; that by
reason of said transaction, although executed in the name of
plaintiff, said Clark ''became indebted to the defendant'' in
the aggregate amount of $12,544.13, no part of which has
been paid, and that there was owing by said Clark to the
defendant on the dealings and transactions aforesaid, with
accrued interest computed ''to the present time,'' the sum
of $20,776.17.

We remark that we have stated the figures or amounts as
they are given in the findings of fact, and do not vouch for
their correctness. In view, however, that no objections have
been made by any one respecting the correctness of the figures
or amounts as herein stated, we have not considered it our
duty either to verify or to correct them, if they are not
correct.

As conclusions of law, the court found, that the amounts
found due and owing as aforesaid from said Clark to the de-
fendant should be set off against the amount found due and
owing from the defendant to said Clark as hereinbefore stated
in the findings; that in view that the amount found due and
owing by said Clark to the defendant on his counterclaim
was greater than the amount found due and owing by the de-
fendant to said Clark upon the cause of action set forth in
the complaint, the action should be dismissed. Judgment
was entered accordingly, from which the plaintiff prosecutes
this appeal.

The plaintiff, in its assignments of error, assails the find-
ings of fact, the conclusions of law, and the judgment. The
assignments relating to the findings of fact are all couched in
practically the same terms, namely:

"The court erred in finding in finding of fact No. 3 that the
plaintiff was organized by H. P. Clark for the purpose of the trans-
action of his personal business under said corporate name."

The other assignments are mere repetitions of the one just
stated, so far as alleging error is concerned, but they differ

or vary from the first assignment, in that they state or indicate propostions differing from or other than in the finding hereinbefore set forth. Nothing is said in the assignments that the court erred, for the reason that there is no evidence in support of the findings or in what particular or particulars the evidence fails to support the facts found by the court. The assignments relating to the findings of fact, under the rules and repeated decisions of this court, are clearly insufficient. The assignments of error relating to the conclusions of law are, however, sufficient. The foregoing assignments are supplemented, or attempted ' to be, by the following:

"The evidence is insufficient to support the judgment in the following particulars, namely: (a) There is no evidence whatever showing a consideration for the Clark note to Spiro."

Then follows (b), (c), (d), and (e) in the same form, except that they relate to other matters. Taking the assignments as a whole, therefore, they are, to say the least, quite out of the ordinary, if not entirely unique.

It is the findings of fact that are based upon the evidence, and, unless it is pointed out that the evidence fails to support the findings, and in what particulars the findings are not so supported, the assignments, so far as they relate to the findings of fact, are of no avail. The conclusions of law are deduced from the findings of fact, and, if the facts found justify the court's conclusions when considered in the light of the law applicable to the facts, the conclusions are invulnerable. Finally, the judgment rests upon the findings of fact and conclusions of law. If, therefore, it is not pointed out wherein the evidence is insufficient to sustain the findings of fact, and the findings of fact are sufficient to support the judgment, the latter cannot be assailed, upon the grounds and for the reasons stated in the assignments in this case. In our judgment there is, however, ample evidence to support the findings of fact, and the conclusions of law are invulnerable to the objections urged against them. There are a number of propositions of law presented in plaintiff's brief, however, which we shall now proceed to consider.

The first proposition is that "it is not true that plaintiff

corporation was organized by Clark for the transaction of his personal business.'' As to that it is only necessary to say that there is ample evidence in the record to sustain the court's finding in that regard, and hence this court cannot interfere.

It is next urged that ''it is not true that the dealings forming the basis of the counterclaims were between the defendant and Clark, * * * and that plaintiff is not the real party in interest.'' Here again it is only necessary to say that there is ample evidence to sustain the court's finding in that behalf.

It is further asserted that the note given by Clark to the defendant is not a proper subject of counterclaim or set-off against plaintiff's note. In this connection it is argued with much vigor that, although it were conceded that Clark organized the plaintiff corporation and owned practically all of its capital stock, that would not destroy or even affect the corporate entity of the plaintiff, and hence a claim against Clark could not legally be counterclaimed or set off against plaintiff's cause of action against the defendant. In support of that contention plaintiff cites and relies upon the following authorities: *Louisville Banking Co.* v. *Eisenman*, 94 Ky. 83, 21 S. W. 531, 1049, 19 L. R. A. 684, 42 Am. St. Rep. 335; *City of Winfield* v. *Wichita Co.* (C. C. A.) 267 Fed. 47; 10 Cyc. 376; 14 C. J. 865-949. The soundness of the rule laid down in the authorities cited is not questioned, indeed is conceded. It, however, has no application to the facts and circumstances of the case at bar. That, under certain circumstances, the legal entity of a corporation must be entirely disregarded is clearly pointed out by the court in the case first above cited. The courts have had frequent occasion to consider facts and circumstances similar or analogous to those in the case at bar, and to apply the law to such facts and circumstances. It would be a mere travesty of justice if courts could or should refuse to look behind the mere form of a transaction in order to ascertain the real truth, and reach and hold responsible the real parties in interest. In *Hunter* v. *Baker Motor Vehicle Co.* (D. C.) 225 Fed. 1006,

it is held that the separate entity of a corporation may be disregarded where it "is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation." See, also, under the same title and to the same effect (C. C.) 190 Fed. 665. In *Spokane Merchants' Ass'n* v. *Clere Clothing Co.*, 84 Wash. 616, 147 Pac. 414, the Supreme Court of Washington, in passing upon the question now under consideration, in the course of the opinion, said:

"Courts no longer hesitate to look through forms to substance, and ignore a mere colorable corporate entity to the end that rights of third parties shall be protected."

In the case of *First National Bank* v. *Treblin Co.*, 59 Ohio St. 316, 59 N. E. 834, the proposition that a corporate entity may be entirely disregarded in order to reach and protect the real parties in interest and to disclose the real transaction is well illustrated and applied. See, also, *In re Muncie Pulp Co.*, 139 Fed. 546, 71 C. C. A. 530. In 14 C. J. § 21, p. 61, the law is stated thus:

"The abstraction of the corporate entity should never be allowed to bar out and prevent the real and obvious truth."

It is not necessary to pursue the authorities further.

The foregoing statements of the law are clearly applicable to the facts and circumstances of the case at bar. Here Clark, frequently, if not always, during the period of time in question, used the corporate name of plaintiff to transact, as he himself says, some of his personal business. In one of his letters to the defendant, in speaking of the note, which it is insisted was not a proper subject of counterclaim or set-off by the defendant against the causes of action set forth by the plaintiff, Clark wrote:

"You hold a note of mine for $5,012.10, given in connection with our settlement some time ago. Wish you would turn in the note, and I will give you credit for the amount of the note and interest on your account in the Western Securities Company's books, thus reducing the amount of the charge, and also credit the bills payable on my books. The amount due from you to the Western Securities Company is $6,871.59."

If the facts were not as found by the district court, why did Clark desire to credit the defendant on the plain-

tiff's books? In ordinary dealings between individuals credit is not given on the books of a corporation, unless some good reason is stated therefor, such as an assignment of a claim or similar matters. The evidence is clearly to the effect that during the time of the transactions and dealings involved in this action the plaintiff corporation transacted no business upon its own account. Clark kept all the books of the corporation. Everything that was done was done by him. Every transaction related to his own personal affairs, and not to corporate affairs.

In this connection it is, however, also insisted that the court erred in admitting in evidence Clark's declarations and statements respecting his relationship to the plaintiff corporation. This contention is based upon the well-established doctrine that the agency or authority of an agent cannot be established by the agent's statements and declarations, whether orally or in writing. This contention may be disposed of by merely referring to the equally well-established doctrine that where a cause is tried to a court without a jury the mere fact that incompetent evidence is admitted is of no consequence, if there is sufficient competent evidence to justify the findings respecting a material issue. *Spratt* v. *Paulson*, 49 Utah, 9, 161 Pac. 1120, and cases there cited. There certainly was some competent evidence before the district court of Clark's relation to the plaintiff, apart from his own statements and declarations. Besides, the doctrine is also well established that, in cases where the question whether the alleged agent is the real party or not, ''all the facts and circumstances showing the relation of the parties and their treatment of each other, and throwing light upon the character of such relation are admissible in evidence.'' (2 C. J. § 708, p. 944.)

Again, in the case at bar, the evidence and the court's findings are to the effect that the plaintiff permitted Clark to so use its name for his own personal purposes and dealings for a long period of time. Indeed, during the years in which the dealings and transactions involved in this case took place, the plaintiff, it seems, transacted no business of its own, but what business was transacted in its name was in

fact Clark's personal business. Where statements of an alleged agent are made under "circumstances that the principal may fairly be deemed to have assented to" them, the statements are admissible in evidence as against the alleged principal. 1 Mechem on Agency (2d Ed.) § 286. In view of the circumstances of this case, it is not necessary to pursue this subject further.

It is, however, further contended that defendant's claim for his share of the profits arising from the sale of the stock under the oral agreement between Clark and the defendant is void under the statute of frauds, for the reason that that agreement was not reduced to writing. There is manifestly no merit to this contention. While there are several answers to the contention, the one that the transaction was fully executed and consummated and Clark had received **11, 12** and retained the fruits of the transaction is sufficient to show the statute of frauds has no application, and thus cannot shield Clark from an accounting to the defendant for his share of the profits. Moreover, the real transaction between the defendant and Clark with respect to the stock deal did not constitute a sale, and for that reason the authorities cited by plaintiff have no application.

It is further insisted that the note given to the defendant by Clark was without consideration. This contention has, if possible, less merit than the one just stated. The note represented assessments that were owing by Clark to a mining company upon his stock. The defendant was allowed credit for special services rendered to the mining company, and applied those credits in payment of Clark's assessments on his stock, and Clark gave the defendant the note in question as evidence of Clark's indebtedness for the purpose aforesaid. There is no question but that the defendant was allowed credit by the mining company for the full amount of Clark's assessments and the full amount of the note in question, and that Clark's assessments were fully paid to the company in that way. Clark concedes this, and also concedes that his assessments were paid in that way. He, however, contends that the defendant was not entitled to the amount he received for his services, or to any amount. In fact, Clark asserts that, by reason of

the relationship existing between the defendant and the mining company at the time in question, he was not legally entitled to any payment for the services in question. It is not easy to understand how Clark can champion the rights of the mining company, if indeed it had or has any, in this proceeding. He admits that his assessments were fully paid in the manner stated, and that the company never has questioned the defendant's right to be compensated for the services in question in the amount allowed him. Clark therefore is not concerned with that transaction, and cannot avail himself of it, even though the company had a good defense to defendant's claim against it, or has now a valid claim against him for the matters just stated.

In this connection it is, however, also contended that the defendant had no legal right to any of the profits realized from the sale of the mining stock by Clark by reason of his fiduciary relation to the company which purchased the stock from Clark. Here again the ordinary mortal is somewhat amazed at Clark's conception of what constitutes either a legal or a moral obligation. Again, assuming, but not conceding, that Clark's contention that, because of the fiduciary relation existing between the defendant and the mining company to whom Clark sold the stock, and from the sale of which he realized the profits in question, the defendant was not entitled to profits as against the company is correct, how is that fact, if it were such, a defense for Clark in this proceeding? Quite apart from the fact that Clark's relation to the company was the same as that of the defendant, the mere fact that the company might have complained, or could now complain, is no defense for Clark. But here again the transaction was not what Clark contends it was, or one which the evidence discloses was not proper in view of the facts.

Finally, it is insisted that the court committed fatal error in not expressly finding upon the issue of want of consideration for the note by Clark to the defendant. It is true that the court did not specially find that the note was given for a valuable consideration. The court, however, in effect found that the note constituted a valid and subsisting obligation

which was due from Clark to the defendant. That finding necessarily and by unavoidable implication also constituted a finding that the note in fact was given for a valuable consideration. In view of the circumstances, the failure to make the finding which it is now insisted should have been made does not constitute reversible error, if indeed it can be considered as being erroneous. This proposition is settled by the following cases decided by this court: *Skliris* v. *Melis*, 51 Utah, 391, 170 Pac. 968; *I. X. L. Stores Co.* v. *Moon*, 49 Utah, 262, 162 Pac. 622; *Munsee* v. *McKellar*, 39 Utah, 282, 116 Pac. 1024.

As before stated, although the assignments of error are in the condition indicated, we have, nevertheless, considered and passed on every proposition argued by plaintiff in its brief, and, after doing so, are forced to the conclusion that the record presents no reversible error.

The judgment is therefore affirmed, with costs.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.