## In re LOVE'S ESTATE.
## WILSON et al. v. TAYLOR.

No. 4910.   Decided February 8, 1930.   (285 P. 299.)

*William Reger,* of Salt Lake City, for appellants.

*Evans & Sullivan* and *Chris Mathison,* all of Salt Lake City, for respondent.

HARRIS, *District Judge.*

This is an appeal from an order admitting a certain document to probate and appointing Glen R. Taylor administrator with will annexed.

Flora B. Love died at Salt Lake City, Utah, on October 13, 1928, leaving surviving her neither husband nor issue. Her heirs were three half-brothers and the children of a number of half-brothers and sisters.

On October 22, 1928, Mary E. Wilson, widow of a half-brother of the deceased, filed a petition praying for the admission to probate of three documents as the last will of the deceased and praying for issuance of letters of administration with will annexed to one S. T. Ricketts of Salt Lake

City. Those documents are referred to in the record as Exhibits D, E, and F.

Exhibit D reads as follows:

"I, Flora B. Love, being in good health, and sound mind but knowing how uncertain life is, desire to make deposition of property.

"I authorize my nephew Edwin Wilson to have power to transact all necessary business.

"I wish all expenses of illness and funeral paid after that an equal share to go to each child namely Ethel L. Taylor, and Glen R. Taylor. And my blessing goes to each child.

"Signed this 2nd day of June, 1927.

"Subscribed to by Flora B. Love in the presence of said Flora B. Love, and in the presence of each other, and declared by her to be her last will and testament, and we, in the presence of each other, here affix our signatures as witnesses.

"Signed Flora B. Love
"Mrs. W. C. Frederick.
"W. C. " "

Exhibit E reads as follows:

"I, Flora B. Love, being in good health and sound mind, but knowing how uncertain life is desire to make deposition of my property.

"I authorize my nephew, Edwin Wilson to have power to transact all necessary business.

"I wish all expenses of illness and funeral paid after that the interest on $150.00 to be paid to my brother Ed Wilson during his life time. At his death the above amount to be equally divided between Margaret, Earl, and Morris, his children. The remainder of my property to be all given to my sister in law Mrs. C. H. Wilson during her life time at her death it is to be equally divided between her children, Gertrude, Edwin, Chester and Clifford and my blessing goes to each of them.

"Signed this      1927

"Subscribed to by Flora B. Love in the presence of the said Flora B. Love and in the presence of each other and declared by her to be her last will and testament and we in the presence of each other, here affix our signatures as witnesses.

"Signed Flora B. Love."

It is conceded that both these exhibits are entirely in the handwriting of the deceased. Exhibit D is written in lead pencil and is written on both sides of a single sheet of ordi-

nary tablet writing paper. There appear also on this document some figures in the handwriting of deceased indicating that she had used a part of this sheet to figure some account prior to writing the will thereon. It clearly appears that these figures do not purport to in any way affect the meaning of the will and that they have no significance in this case. This court, in the case of *In re Estate of John W. Yowell*, Deceased (Utah) 285 P. 285, just decided, held that a legal olographic will may be written, signed, and dated by the testator on a sheet of paper upon which appears other written or printed matter, where it appears that such other matters were not intended by the testator to form any part of the will.

Exhibit E is written in ink, and also on both sides of a similar sheet. Both these exhibits were found with other papers in a paper candy box on a dresser in deceased's apartment. Exhibit D was folded in four folds and placed with Exhibit E, folded in three folds.

Exhibit F was a properly executed will made by Flora B. Love, dated March 26, 1925, leaving all her property to her husband, Alex P. Love, who died before June 2, 1927, leaving no issue, and it is conceded that this exhibit is of no relative importance in this case. The appellants contend that it would be better practice to admit Exhibit F along with the other two documents and then later determine whether it lapsed by reason of lack of devisees or had been later revoked. We see nothing to commend such practice.

On October 30, 1928, Glen R. Taylor filed written objections to the above petition in which he admitted the residence and date of death of deceased and that she left a will, but alleged Exhibit D was the will of deceased, and denied that the other documents constituted any part of the will. At the same time Glen R. Taylor filed a petition for admission to probate of the above document referred to as Exhibit D as the last will of Flora B. Love, deceased, alleging that Edwin Wilson was a nonresident and incompetent to act and asking for letters of administration with will annexed to

himself. Mrs. Wilson filed objections to this petition, and November 28, 1928, Edwin Wilson by his attorney, filed a counter petition asking for admission to probate of all three of the said documents and praying for his appointment as executor. The case was tried to the court without a jury.

There was no dispute in the evidence, so that no questions of fact are involved but only questions of law.

The court entered an order adjudging that Exhibit D was the olographic will of the deceased, and admitting the same to probate, and appointing Glen R. Taylor administrator with will annexed, and denied the probate of Exhibits E and F.

The first error assigned is that the court erred in not admitting Exhibits E and F as parts of the will.

Comp. Laws Utah 1917, § 6316, reads: "An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed. Such wills may be proved in the same manner as other private writings."

Under such a statute it is almost the universal ruling that the writer of an olographic will must designate the year, month, and day in order to comply with the terms of the statute which requires such a will to be "dated." *Estate of Vance,* 174 Cal. 122, 162 P. 103, L. R. A. 1917C, 479; *In re Estate of Carpenter,* 172 Cal. 268, 156 P. 464, L. R. A. 1916E, 499, annotation covering subject. This section of the statute has been before this court for construction on the question of the meaning of the term "entirely written" in the case of *In re Wolcott's Estate,* 54 Utah 165, 180 P. 169, 170, 4 A. L. R. 727. There the court said:

"There is no doubt that the deceased intended the document to be her will, but the right to dispose of property by will is governed and controlled entirely by statute. Such statutes are mandatory, and, unless strictly complied with, the instrument, as a will, is void."

The court later on points out that the statute is based upon long experience, and that the court has no suggestions as to changing it regardless of the hardships that may result in a given case, adding that "unflinching loyalty to the law, both in letter and in spirit, is the only sure ground upon which to stand."

It will be observed that Exhibit E is not dated, and apparently counsel for appellant does not seriously dispute the proposition that the will must be dated, but he contends that Exhibits D and E under the circumstances constitute one single continuous instrument constituting the olographic will of the deceased.

Appellant cites a number of cases, many of which are not in point, but reference is here made to the following: *Estate of Merryfield*, 167 Cal. 729, 141 P. 259; *Estate of Taylor*, 126 Cal. 97, 58 P. 454; *Sellards* v. *Kirby*, 82 Kan. 291, 108 P. 73, 28 L. R. A. (N. S.) 270, 136 Am. St. Rep. 110, 20 Ann. Cas. 214.

It may be conceded that these cases hold that an olographic will may be written on more than one sheet of paper without dating and signing each sheet, also that it is not always essential to have the sheets fastened together by some mechanical device; but an examination of these cases and other similar cases cited discloses that, under the facts of each case, there is an obvious connection in their provisions or a coherence running through the separate papers. For example, in the last case above referred to is the following quotation:

"It is a rudimental principle that a will may be made on distinct papers. * * * It is sufficient that they are connected by their internal sense, by coherence, or adaptation of parts."

The two documents here offered as one will are so completely inconsistent or antagonistic in their provisions, in that Exhibit D undertakes to give all the residue of the

estate to the Taylors while Exhibit E undertakes to
give it all to the Wilsons, that there appears to be no
way that these could be construed together as a part
of a harmonious whole will. On the contrary, had they both
been legally executed, the former will would have been re-
voked by the latter, even though there were no express re-
vocation of the former will. See annotation in 51 A. L. R.
652, where, at page 657, the annotator says: "From the time
of earliest reported cases down to the present, the courts,
English and American, have held that the execution of a will
disposing of the entire estate of a testator in a manner abso-
lutely inconsistent with the provisions of an earlier will re-
vokes by implication the earlier will, though the will later
in time contains no words of revocation, and no mention of
the earlier will"—and at page 669:

"A holographic (or olographic) will containing no clause of re-
vocation, but disposing of the whole estate inconsistently with a
prior formal will, is a revocation of the former one."

In the case of *In re Maginn's Estate,* 278 Pa. 89, 122 A.
264, 265, 30 A. L. R. 418, the court, upon refusing to admit
several sheets as one document, said:

"It is true a will may be written on several detached or loose
sheets of paper, and, while there may be confusion in the order or
arrangement, if they can be coherently read as a will, that is, con-
tain nothing incongruous or out of harmony in the general concep-
tion as a will, or if the several parts suit, fit in, and are adaptable
as a will, it will be given effect, provided the several pages be con-
nected by their internal sense."

But the appellant argues that the court is not now con-
cerned with the construction of the will, but only with the
question of whether or not it has been duly executed; that,
in an action to establish the validity of a will, the construc-
tion of the will is not, and cannot be involved. He cites
*Kerr* v. *Lunsford,* 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668;
*In re Witt's Will,* 120 Kan. 200, 243 P. 296; *Courtney* v.

*Daniel,* 124 Okl. 46, 253 P. 990; 2 Schouler on Wills (6th Ed.) p. 1326; *Estate of Lynch,* 142 Cal. 373, 75 P. 1086.

A casual reading of these cases will disclose that on their facts they are clearly distinguishable from this case. Conceding that each of them recognize the general rule that a probate court may not attempt to construe a will upon petition for its probate, none of them go so far as to hold that a court may not examine the offered document for the purpose of determining whether or not it is in fact a will. The case of *Rogers* v. *Mosier,* 121 Okl. 213, 245 P. 36, cited by appellant, effectively disposes of his contention. In the first headnote to that opinion, it is said in part:

"While, in a contest over the probate of a will, its construction is not before the court and cannot be determined, yet the court can examine the contents of the instrument to determine whether it is in fact a will * * *"

In the body of the opinion the court says:

"In other words, the court must determine that there is a will in fact before admitting it to probate, and for this purpose every will must be construed to the extent of determining whether or not the instrument propounded is in fact a will, and, if the instrument propounded, by its terms, fails to come within the legal requirements to constitute a will, it should be denied probate as a will."

The next assignment is that the court erred in failing to make findings of fact and conclusions of law on the issues in the case. The court made the usual "Order Admitting Will to Probate" and "Certificate of Proof of Will" with reference to Exhibit D but made no findings with respect to Exhibits E and F.

Comp. Laws Utah 1917, §§ 7872 and 7558, provide that issues of fact joined in probate proceedings must be tried in conformity with the requirements of the Code of Civil Procedure, and section 6829 of the latter Code provides that "in giving the decision, the facts found and the conclusions of law must be separately stated, and the judgment must thereupon be entered accordingly."

*In re Manning's Estate,* 38 Utah 281, 112 P. 167, 169, this court held that findings of fact and conclusions of law were necessary to sustain a judgment in a petition for the appointment of a guardian where issues were joined as to the facts and many witnesses were examined on both sides and the evidence was in conflict. The court however in that case said: "It is not necessary [for us] to decide whether findings are required in all contested cases or controverted issues relating to probate and guardianship proceedings."

If it be conceded that it was error to fail to make findings in this case, we are convinced that the error was not one that would require a reversal of the case, because, as already pointed out, there was no dispute in the evidence offered, and the only findings possible under the evidence would necessarily have been adverse to the appellant. *Maxfield* v. *West,* 6 Utah 379, 24 P. 98; *Fisk* v. *Patton,* 7 Utah 399, 27 P. 1; *I. X. L. Stores Co.* v. *Moon,* 49 Utah 262, 162 P. 622; *Snyder* v. *Allen,* 51 Utah 291, 169 P. 945; *Skliris* v. *Melis,* 51 Utah 391, 170 P. 968; *Western Sec. Co.* v. *Spiro,* 62 Utah 623, 221 P. 856.

In the case of *Snyder* v. *Allen,* supra, this court, after reciting that a review of the evidence discloses that no finding would have been permissible other than in support of the judgment as rendered by the trial court, says: "Therefore, while the failure of the trial court to find upon all the material issues presented by the pleadings was clearly error, the error, as we view the record before us, did not affect any substantial right of the defendants, and this court will not reverse the judgment where the error thus excepted to and complained of resulted in no prejudice to the defendants."

The court then refers to the statutes, which are now Comp. Laws Utah 1917, §§ 6968 and 6622, and read as follows:

6968. "No exception shall be regarded unless the decision excepted to is material and prejudicial to the substantial rights of the party excepting."

6622. "The court must in every stage of an action disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

In this case, if the court had made complete findings, as to all the evidence introduced, the only possible conclusion would have been that Exhibit E, relied upon by appellants, was not executed as required by law, in that the same was not properly dated and that the same was not a part of Exhibit D. Therefore the failure to make such findings and conclusions was harmless error. This is as it should be, for no possible useful purpose could be served by ordering a new trial because of an error of this kind, when there is no dispute as to the facts and manifestly the proper result has been reached upon the law of the case.

Lastly, it is contended that the court erred in its conclusion that Edwin Wilson, by reason of his nonresidence, was incompetent to act as executor of the will. Appellants cite *Estate of Kelley*, 182 Cal. 81, 186 P. 1041; *In re Brown*, 80 Cal. 381, 22 P. 233; *Hecht* v. *Carey*, 13 Wyo. 154, 78 P. 705, 110 Am. St. Rep. 981; Annotation, *In re Mulford*, 1 L. R. A. (N. S.) 341; 23 C. J. 1025.

Comp. Laws Utah 1917, § 7583, provides:

"Where a person absent from the state or a minor is named executor, if there is another executor who accepts the trust and qualifies, the latter may have letters testamentary and administer the estate until the return of the absentee or the majority of the minor, who may then be admitted as joint executor. If there is no other executor, letters of administration with the will annexed must be granted; but the court may in its discretion revoke them on the return of the absent executor or the arrival of the minor at the age of majority. * * *"

Nowhere does our statute expressly disqualify a nonresident to act as executor.

While the question is a new one in this jurisdiction, the authorities above cited, under similar statutes, seem to be

agreed that mere nonresidence does not disqualify a person as executor, provided he appear and qualify and thus submit to the jurisdiction of the court. Respondent does not now seriously dispute this propostion, but he argues that, under all the circumstances of this case, the result should stand because Edwin Wilson did not appear and offer the will for probate within the time prescribed by Comp. Laws Utah 1917, § 7568, that this leaves it to the sound discretion of the court as to whether or not he should be appointed, and that there was no abuse of such discretion here.

Comp. Laws Utah 1917, § 7568, reads:

"If the person named in a will as executor, for thirty days after he has knowledge of the death of the testator and that he is named as executor, fails to petition for the probate of the will, and for letters testamentary, he may be held to have renounced his right to letters, and the court may appoint any other competent person administrator, unless good cause for delay is shown."

It appears from the record that Mrs. Wilson died on October 13, 1928, and Edwin Wilson did not petition for the probate of the will until November 28, 1928. The will was delivered to his attorney by his mother on October 19th, who filed a petition for the mother on October 22d asking for the appointment of the undertaker, Mr. Ricketts, as administrator with will annexed.

It may be conceded that, where the petition by the party named as executor is filed in time, the court has no discretion but to appoint the party named executor unless he is disqualified by the statute, but this court has already committed itself to the doctrine that failure to make timely application for letters testamentary leaves it in the discretion of the court whether he appoints the person having the preferential right or some other competent person. *In re Slater's Estate,* 55 Utah 252, 184 P. 1017. See, also, *Rice* v. *Tilton,* 13 Wyo. 420, 80 P. 828.

It appears from the record that Edwin Wilson, by the

will, "authorized to have power to transact all necessary business," has been a resident of Chicago, Ill., all his life, and has never appeared in this court except by his attorney, who signed and verified his petition and objections to respondent's petition. His petition asks for the ■ admission of all three documents as the will, alleges that petitioner is an heir and beneficiary under the will and consents to act as "such executor." It should be remembered in this connection that the assets of the estate consist of approximately $500 worth of personal property and an equity in a contract to purchase a certain city lot with rooming house thereon variously estimated at from $1,500 to $2,500, which equity required no little attention for its preservation. Wilson failed to establish his right to the residue of the estate as alleged in his petition. Whether he is willing to come from Chicago and administer this small estate, with the Taylors as the beneficiaries, for the statutory fee allowed executors, is problematical and a matter on which the record is silent. If we consider, along with all the above facts, the natural reaction at defeat to his right to the residue of the estate and the possible temptation to eat up as much of the estate as possible by traveling expenses from Chicago to Salt Lake, we feel that, under all the peculiar circumstances of the case, there was no abuse of discretion in the court appointing a resident administrator with will annexed.

Appellants cite in this connection *Estate of Randall,* 177 Cal. 363, 170 P. 835, and *Estate of Vernon,* 182 Cal. 91, 187 P. 11. Both of these cases are cases allowing the nonresident widows of the deceased to come in after the time prescribed by the statute and have letters of administration with will annexed vacated and letters testamentary issued to them to finish the probate proceedings. There is no difficulty, however, in reconciling these cases with the case at bar, for the reason that they can both be reconciled with the theory that the matter was within the discretion of the trial court, and, under the facts of those cases (entirely dif-

ferent from the facts here), there was no abuse of discretion in appointing the widows.

By what is herein said it is not intended to lay down any general rule that a person failing to present the will in time prescribed by the statute does or does not forfeit his preferential right to appointment. All that is held is that, under the peculiar facts and circumstances of this case, the matter was within the discretion of the trial court, and that there was no clear abuse of such discretion in this case such as to justify a reversal of the case. The policy of the courts and the law should aid in speedy settlement of these small estates.

JUDGMENT AFFIRMED; costs to be paid out of the estate.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., being disqualified, did not participate herein.