# NEEDHAM v. FIRST NAT. BANK OF SALT LAKE CITY.

No. 6041.   Decided December 29, 1938.   (85 P. 2d, 785.)

Rehearing Denied March 17, 1939.

*L. A. Miner*, of Salt Lake City, for appellant.

*Roberts & Roberts*, of Salt Lake City, for respondent.

FOLLAND, Chief Justice.

This is an appeal from a judgment rendered in the Third Judicial District Court of Salt Lake County. The facts are these: During the forepart of the year 1911, Imri B. Needham, plaintiff and appellant, loaned to his father-in-law B. F. Grant, now deceased, a promissory note executed by Zion's Benefit Building Society in favor of Imri B. Needham for the sum of $750 bearing interest at the rate of six per cent per annum. The note contained Needham's endorsement in blank. This note was later endorsed by one H. J. Grant and paid by the Zion's Benefit Building Society to the State Bank of Utah for the credit of some unknown individual. B. F. Grant died on September 17, 1936. On the 16th of November, 1936, appellant presented and filed with respondent bank, as administrator of the estate of B. F. Grant, a certified claim for $850 claimed to be owing Needham from B. F. Grant. This sum included interest from February 24, 1934 (the date on which it is alleged by plaintiff-appellant that payment of interest ceased) to October 24, 1936. Respondent denied the claim, whereupon Needham

commenced suit to recover the amount alleged to be due. His claim is based on two causes of action.

The first cause of action sets out, among other things, that the note was loaned by appellant to B. F. Grant in 1911 for Grant's accommodation and at his request; that the note has never been returned; that B. F. Grant wrongfully and without consent of appellant negotiated said note to parties unknown; that the note was paid by the maker, Zion's Benefit Building Society, for the credit of parties unknown; and that appellant never learned of said negotiation until 1935.

The second cause of action sets out the loan of the note and other similar facts. But instead of the allegation of wrongful negotiation by B. F. Grant, it is alleged that said B. F. Grant promised to pay interest on said loan at the rate of six per cent per annum and that interest has been paid up to and including February 24, 1934.

Respondent answered denying the above allegations and set out by way of affirmative defense that "on or about the 1st day of February, 1917, said B. F. Grant entered into an agreement with said plaintiff whereby said B. F. Grant assumed and agreed to pay a certain mortgage on the premises then owned and occupied by the plaintiff herein and Hazel Needham, his wife, for all moneys loaned and advanced by the said Imri B. Needham, to the said B. F. Grant, and that on the 1st day of February, 1921, said B. F. Grant fully satisfied and discharged said mortgage, in the sum of $1326.00, in full settlement of all indebtedness then existing between the said plaintiff and the said B. F. Grant, deceased."

Appellant replied denying said agreement and alleged that if B. F. Grant ever paid off the mortgage therein referred to "he did so in consideration of a further loan of $1300.00 made by the plaintiff herein on or about the 1st day of February, 1910, to the said B. F. Grant, and not otherwise."

The case was tried before the court. At the conclusion of the case the court found as to the first cause of action that

"the said B. F. Grant did not, on or about the 24th day of May, 1911, or at any other time, wrongfully or without the knowledge or consent of plaintiff herein, negotiate a certain promissory note dated December 20, 1910, for $750.00 bearing interest at the rate of six per cent per annum executed by the Zion's Benefit Building Society, a Utah corporation, in favor of Imri B. Needham, the plaintiff herein and convert the same or the proceeds thereof, to his own use." It also found that no action for the taking or detaining of said note was brought until the 11th day of June, 1937.

As to the second cause of action, the court found that on or about the 24th day of May, 1911, Imri B. Needham loaned to B. F. Grant at his request and for his accommodation a promissory note, that said B. F. Grant promised to pay interest at the rate of six per cent per annum until the note was returned and principal paid to Needham, that interest was paid from the 24th day of May, 1911, to about the 1st day of February 1917. The court then found:

"That on or about the 1st day of February, 1917, the said B. F. Grant assumed and agreed to pay a certain mortgage on the premises then owned and occupied by the plaintiff, Imri B. Needham and Hazel Needham, his wife, for all moneys loaned and advanced by the said Imri B. Needham to the said B. F. Grant."

"That on or about the 1st day of February, 1921, the said B. F. Grant fully satisfied and discharged said mortgage, in full settlement of said indebtedness then existing between the said plaintiff and B. F. Grant, deceased."

"That no interest was paid on said promissory note subsequent to the 1st day of February, 1921."

"That no action was brought for the recovery of said loan, or for taking or detaining, or upon said note, until the 11th day of January, 1937."

From the above findings the court made the following conclusions of law:

"1. That the said defendant is entitled to a judgment of no cause of action against the plaintiff on plaintiff's first cause of action.

"2. That the action set forth in the first cause of action is barred by the Statute of Limitations, Subdivision 2 of Section 104-2-24, Revised Statutes of Utah, 1933.

"3. That the said defendant is entitled to a judgment of no cause of action on plaintiff's second cause of action.

"4. That the action set forth in the second cause of action is barred by the Statute of Limitations, Section 104-2-22, Revised Statutes of Utah 1933.

"5. That the action set forth in the second cause of action is barred by the Statute of Limitations, Section 104-2-23, Revised Statutes of Utah, 1933."

From a judgment in favor of the defendant bank Needham appeals and assigns numerous errors. These assignments of error may be grouped under two heads: (1) The findings of fact are insufficient to support the conclusions of law; and (2) The evidence is insufficient to support either the findings or the conclusions.

It is necessary that the conclusions of law find support in, and arise out of, the findings of fact. *Parrott Bros. Co.* v. *Ogden City,* 50 Utah 512, 167 P. 807; *Western Securities Co.* v. *Spiro,* 62 Utah 623, 221 P. 856; *Friedli* v. *Friedli,* 65 Utah 605, 238 P. 647. Appellant argues that there is no finding of fact from which the court could conclude that the two causes of action were barred by the statute of limitations. True, there was no finding of fact which set out the date when the statute commenced to run (or when the cause of action accrued), but whether or not such a finding is necessary to support a conclusion that the statute has run need not be decided in this case since the conclusions of law relating to the statute of limitations were mere surplusage and not necessary for a determination of this case which was decided on the merits and judgment so entered.

The material issues in the first cause of action were (1) whether there had been a loan of the note by appellant to B. F. Grant; (2) if so, whether there had been a conversion of the note by Grant. The court found that there was a loan of the note but that "the said B. F. Grant did not, on or about the 24th day of May, 1911, or at any other time, wrongfully or without the knowledge or

consent of plaintiff herein, negotiate a certain promissory note * * * and convert the same or the proceeds thereof, to his own use." From the above findings the court concluded that "said defendant is entitled to a judgment of no cause of action against the plaintiff on plaintiff's first cause of action." Having decided the cause of action on the merits, the court need not have determined the question concerning the statute of limitation.

In the second cause of action the material issues were: (1) whether there had been a loan by appellant to B. F. Grant; and (2) if so, whether the loan had ever been paid or satisfied. After finding that there had been a loan the court further found that "on or about the 1st day of February, 1917, the said B. F. Grant entered into an agreement with the said plaintiff, Imri B. Needham, whereby the said B. F. Grant assumed and agreed to pay a certain mortgage on the premises then owned and occupied by the plaintiff, Imri B. Needham and Hazel Needham, his wife, for all moneys loaned and advanced by the said Imri B. Needham to the said B. F. Grant." In pursuance of the above agreement the court found that "on or about the 1st day of February, 1921, the said B. F. Grant fully satisfied and discharged said mortgage, in full settlement of said indebtedness then existing between the said plaintiff and B. F. Grant, deceased." The court concluded that "the said defendant is entitled to a judgment of no cause of action on plaintiff's second cause of action."

Since the court found on the material issues before it, and decided the case on the merits, it was unnecessary to go further and decide questions which were immaterial. See *Heichemer* v. *Peterson,* 75 Utah 107, 283 P. 435. The conclusions with regard to the statute of limitations were unnecessary and mere surplusage and did not constitute reversible error. See *Thompson* v. *Hays,* 24 Utah 275, 67 P. 670. It is true that the statute of limitations was pleaded and issue raised as to it, but it was an affirmative defense not necessary to be determined where the court

found as it did, to wit, that there was no cause of action as to either claim.

Since the findings of fact are sufficient for the conclusions of law necessary to sustain the judgment, we come now to the question of whether the findings and conclusions on the material issues are supported by the evidence. If the findings are supported by the evidence, it is apparent that the conclusions deduced therefrom are also supported by evidence, and appellant's appeal must fail. *Western Securities Co.* v. *Spiro,* supra.

The plaintiff testified that he loaned the note with his endorsement on it to B. F. Grant in 1911; that he never authorized the negotiation of the note; that in 1935 he first learned that the note had been negotiated and paid; and that he received $11.25 interest quarterly from 1911 to February, 1934. He did not testify that B. F. Grant had paid him any interest during this time. He also testified that B. F. Grant gave him a receipt in 1926 acknowledging the loan. This receipt was introduced in evidence. It originally bore the date 1911, but Needham testified this date was changed to 1926 by B. F. Grant at Needham's request when the receipt was delivered to him.

Heber J. Grant, son of the deceased, testified for defendant. He stated that he kept his father's accounts and that these accounts showed no payments of interest after 1921. These accounts were introduced in evidence. Mr. Grant testified that in 1917 plaintiff Needham and B. F. Grant entered into an agreement whereby B. F. Grant agreed to pay off a mortgage owing by Needham and in the meantime would pay the interest which came due on it.

"Q. Now, Mr. Grant, I will ask you to state what the conversation was. A. Merely that father would take care of the interest on Imri's obligation; that as soon as he was able to clear it off he would do so."

Heber J. Grant testified that in January, 1921, his father, B. F. Grant, agreed to give Needham the money above referred to in full settlement of all debts which were owing by him to Needham:

"Q. Mr. Grant, I will ask you to state whether or not just immediately prior to the issuance of this check as shown in exhibit 2 as check No. 298, I will ask you to state whether or not you were present when this transaction was discussed? Answer that 'yes' or 'No.' A. Yes, sir.

"Q. I will ask you to state where it was, where this discussion took place. A. At father's home, 417 'C' Street.

"Q. And was that immediately prior to the time this check was issued? A. Yes sir.

"Q. Who was present at that time? A. Father, Mother, Imri Needham, his wife, and myself.

"Q. And that was at his home on 'C' Street? A. Yes, sir.

"Q. Here in Salt Lake City? A. Yes, sir.

"Q. I will ask you to state whether or not at that time Mr. Needham was building or contemplating building a new house on 8th Avenue? A. Yes, sir.

"Q. I will ask you to state whether or not you know that? A. Yes, sir.

"Q. Was there any conversation at that time and place with regard to that house? A. Yes, sir.

"Q. State what that conversation was. A. He was acquiring property on the same block that mother and father was residing and he wanted to have additional money because he was going to build a little bit more pretentious home than they were residing in at that time on which he had a tentative sale on, and he needed additional money, and he asked father if he could not clean up his obligations with him so he could at that time have money to clean up his obligations and have a new home.

"Q. Was there anything said as to what obligations this money was to take care of? A. Yes, sir.

"Q. State what they were. A. That it was in full settlement of all father's transactions with Imri up to that date of which there had been numerous unrecorded transactions."

In pursuance of said agreement a check was made out by B. F. Grant to Imri B. Needham on February 1, 1921, for $1326, $1300 representing the principal sum to be paid and $26 the interest for three months. This check was delivered by Heber J. Grant to Needham. Mr. Grant testified that his father, B. F. Grant, paid all bills by checks; that the account books introduced in evidence showed all bills paid

by his father; that subsequent to the check for $1326 there was nothing showing any payment to Needham, or any transaction with him; that if any interest had been paid subsequent to February, 1921, such payment would show on the account books.

Concerning the receipt which Needham testified he received in 1926, Heber J. Grant testified that Needham showed him the receipt in 1935 and that at that time it bore the date 1911. Later on when he again saw it it bore the date 1926.

In rebuttal plaintiff testified that the payment of $1326 was for an entirely different loan than the one involved here, and that he had not entered into any agreement with B. F. Grant in which the latter agreed to pay off a mortgage in consideration of a release of all obligations owing by him to Needham.

Although the above evidence is contradictory, the testimony for defendant bank clearly supports the findings of the trial court. The trial court was not compelled to believe plaintiff's testimony. The fact that Needham loaned the note in 1911 and then did not bring any action to recover the amount until after the death of B. F. Grant twenty-seven years later weakens the strength of any claim he might now make. Since the trial court found that there had been no wrongful negotiation, there was no need to determine at what time plaintiff should have brought suit for a conversion. With respect to the court's finding that there had been a full settlement of all claims Needham had against B. F. Grant at the time B. F. Grant gave Needham a check for $1326 in 1921, this is clearly supported by Heber J. Grant's testimony for defendant. The finding as made also disposes of plaintiff's claim that a receipt was given him in 1926 by B. F. Grant in which the latter acknowledged the debt.

We have determined that the findings as made by the trial court were sufficient and that they are supported by the

evidence. The only other assignment of error is directed to the failure of the court to reopen the case to determine a question not raised by the pleadings but which arose during the course of the trial. The question was concerning security which it appeared plaintiff received from B. F. Grant at the time the loan of the note was made. Plaintiff desired to show that the security was worthless and that his action should not have been for a secured debt.

During the trial defendant moved for a nonsuit on the ground that it appeared that the debt sued on was secured, but the court overruled the motion. At the conclusion of the trial defendant moved for judgment on the same ground, namely, that it appeared from the evidence that the debt sued on was secured. It was at this time that the plaintiff moved to reopen the case to submit evidence to the contrary. The court never ruled on the motion, but neither did it grant the motion of defendant. In other words, the trial court concluded that the action was properly brought and that further evidence to that effect was unnecessary. The decision was based on the merits and not on any claim of defendant that the action was not the proper proceeding. The findings and conclusions are to that effect. Nothing could have been added to what the court already had by reopening the case since the question of the proper proceeding was not determined adversely to plaintiff. He received full benefit for having brought the proper action, and the court's decision so indicates.

The judgment of the trial court is affirmed. Costs to respondent.

MOFFAT, WOLFE, and LARSON, JJ., concur.