(No. 2332.    Oct. 25, 1919.)

## GRISSOM v. GRISSOM

### SYLLABUS BY THE COURT

1. In a suit brought to cancel a deed obtained by fraud, where there is substantial evidence to support the general finding of the court and there are no special findings made by the judge who tried the case, the fact that erroneous evidence was admitted is no ground for reversal, unless it appears that the court considered this evidence in deciding the case.                                    P. 523

2. Where the decree of the trial court in a suit to cancel a deed obtained by fraud is sustained by evidence, although conflicting, it will not be disturbed on appeal.          P. 523

3. In a suit to cancel a deed by a husband to his wife on the ground of fraud, a copy of the husband's will, introduced to show his mental weakness, was inadmissible, where the loss of the original was not accounted for.          P. 524

Error to District Court, Curry County; Richardson, Judge.

Suit by Elijah F. Grissom against Lillian Grissom, to cancel and set aside a deed. Decree for plaintiff, and defendant brings error. Affirmed.

ROWELLS & REESE, of Portales, for plaintiff in error.

PATTON & HATCH, of Clovis, for defendant in error.

### OPINION OF THE COURT

RAYNOLDS, J. This is an appeal from a decree in the district court of Curry county, cancelling and setting aside a deed made by the appellee, Elijah Grissom, to the appellant, Lillian Grissom.

On the 7th day of September, 1917, defendant in error filed his first amended complaint in said court, alleging, among other things, in substance, the following: That on or about the 1st day of May, 1917, he was a widower, the father of two sons by a former marriage, and that the plaintiff in error was a widow, and the mother of one son by a former marriage; that at said time he was the owner of the land described in the complaint, consisting of 680 acres, located in Curry county, N. M.; that the plaintiff in error sought an introduction to him, and by false pretenses induced him to accompany her to California, where she married herself to him on the 9th day of May, 1917, as a part of the scheme to defraud him out of his property; and further charging that the defendant in error was unsophisticated, credulous, with small resisting powers, and to a certain extent mentally weak; that the plaintiff in error was in the prime of life, crafty, cunning, and of a strong mind and willful dispo-

sition; that she represented to him that she loved him, and further represented to him that she had notes amounting to $8,000, all matured and due to her from parties who lived in El Paso, Tex.; that all of said notes would be paid on presentation; and that she had sent said notes to El Paso for collection, and that the proceeds thereof, aggregating $8,000, she would deposit to the joint account of herself and him in said bank; and that in consideration of the expressed love and affection for him, and the deposit of said sum of money, $8,000, to their joint account, he agreed to deed to her the lands described in the complaint and set out in Exhibit A, attached thereto, and to place the same in escrow in the bank to be delivered when said sum of $8,000, should be deposited in the bank; that she stated to him that if he should die his children would take from her all property then owned by him, and deprive her of support during the remainder of her life; and that unless such arrangements were made that her son, in event of her death, would take and withhold from him all of said sum of $8,000 which she owned; and that, believing and relying upon such representations, he made and acknowledged the deed in question to her; and that upon the making of said deed she took physical possession of it, and refused to deliver it to him to be held by him until she should deposit the sum of $8,000 in said bank; that she, without his consent, forwarded said deed to the county clerk of Curry county, N. M., and had same placed of record; that said deed was procured through fraud, without consideration, and without his consent; that she had no love and affection for him; that she was not the owner of any such notes, and she failed and refused to make the joint deposit as she had promised; that all of her representations were false, and knowingly made by her to deceive him; that he believed and relied upon such representations, and thereby executed the deed in question.

He prayed for the cancellation of the deed, that his title to said land be quited, and for general relief.

The plaintiff in error filed her answer to the first amended complaint, denying generally each and every material allegation of the complaint, except such as are specifically admitted in the answer.

She admitted that the defendant in error owned the lands described in the complaint at the time alleged in the third paragraph of the first amended complaint, but denies the value to be as great as alleged in the complaint; she admits that at said time she was a widow, Mrs. Welch; but she specifically denies that she in any way connived or intended to cheat or swindle defendant in error out of his property or lands; denies that she persuaded him to accompany her to California, or that she exercised any undue influence over him; she admits that she married him on the 7th day of May, 1917, but alleges that such marriage was brought about by the urgent and repeated requests of the defendant in error, and not at her instance and solicitation; she admits that the defendant in error executed the deed in question, and that she forwarded it to the county clerk of Curry county, N. M., for record.

She further alleges by way of new matter that the defendant in error sought an introduction to her about April 1, 1917, and that he at said time commenced his suit to procure her consent to marry him; that she advised him that they had not known each other long enough to contract marriage, but nothwithstanding this, he continued to press his suit with fervor and attention; that he visited her every few days at her father's house from April 1, 1917, until the last week in April, and that during the last week in April and the first part of May, 1917, he stayed almost continuously at her father's house, protesting his love and affection for plaintiff in error, insisting that he had known her long enough and urging her to marry him; and that on the 2nd day of May, 1917, he promised and agreed with her that if she would marry him he would deed to her all of the property and real estate described and set out in the complaint; and

that he would make her a faithful, kind, and loving husband, and would always provide for her; and that in consideration of his promise to deed her said property, and, believing that he had and cherished an affection for her, she agreed to marry him; that pursuant to said agreement, on or about the 4th day of May, 1917, she and the defendant in error started for California for the purpose of uniting in marriage, and consummating said agreement; and that shortly after their arrival in California, to-wit, on the 7th day of May, 1917, they were united in marriage, and commenced housekeeping in an apartment in Los Angeles; and that on the 10th day of May, 1917, pursuant to said agreement wherein she had promised the defendant in error to marry him, and wherein he agreed to deed her said property, he deeded her the property in question; and that he duly acknowledged said deed and delivered it to her on the following day, intending to convey said property to her as her separate and individual property; that on or about the 13th day of May, 1917, he became, or seemed to become, offended at her, and without cause or excuse abandoned her; that she made diligent search and inquiry to learn of his whereabouts, until finally she learned that he was on his road back to New Mexico. She prayed that he take nothing by his suit, that the complaint be dismissed, and that the title to the property in question be quieted and set at rest.

A decree was entered for the plaintiff in the court below. The plaintiff in error seeks a reversal of this decree, and assigns eight errors, which may be considered in two general heads, namely: That the decree is not sustained by substantial evidence, and that the court admitted certain irrelevant and improper evidence. No findings of fact were asked for by the plaintiff in error, nor were any made by the court, the decree being merely an adjudication in favor of the defendant in error, the plaintiff below canceling the deed sought to be canceled. The evidence was voluminous and conflicting, and it is apparent to this court that the plaintiff below,

by his own testimony and that of other witnesses, sustained the allegations set forth in his complaint, and that the defendant below, on the other hand, by her own testimony and that of others, supported the denials in her answer and the allegations of new matter therein.

[2]   On this state of the evidence this court has often decided that it will not disturb findings or decree of the lower court.  Any other rule would be to substitute the judgment of this court for that of the judge who tried the case, heard the evidence, observed the witnesses upon the witness stand, and was in a far better position to pass upon the weight of the evidence and the credibility of the witnesses than is this court, even after a careful perusal of the entire record and the transcribed testimony of the witnesses.

[1]   As to the four remaining assignments of error already mentioned, they may be summarized as follows: The court erred in permitting certain witnesses, both professsional and nonprofessional, to testify as to the mental condition of the plaintiff below; in permitting a copy of an alleged will of the plaintiff, purporting to be recorded in the miscellaneous records of Curry county, to be read and received in evidence.

From the state of the record it is impossible for this court to say that the trial court committed error in admitting such testimony, or that he relied upon the testimony admitted as a basis for the decree.  There was other evidence before the court upon these two subjects. The plaintiff below testified for a period, as show by the record, of four or five hours, was examined, cross-examined, and re-examined by counsel on both sides.  If the question was material as to the weak-mindedness or tendency of the plaintiff to be pursuaded against his will, the judge who tried the case had the witness before him, and was in a position to pass upon these matters, and it cannot be said that there was no evidence of such mental weakness as to make the court's decision wholly without evidence to support it; but, as no findings were

made by the court, nor asked for by the plaintiff in error, this court cannot say that the question of mental weakness was considered by the lower court. The case may have been decided solely upon the proposition that a fraud had been perpetrated by the defendant upon the plaintiff, and there was evidence to sustain this decision of the court upon this ground.

"We do not deem it necessary to consider these assignments for the reason that the conclusion of the court was entirely justified by other evidence in the case without any testimony whatever on the subject. The erroneous admission of testimony will afford no ground for reversal, unless it appears that the court considered such testimony in deciding the case. Lynch v. Grayson, 5 N. M. 487, 25 Pac. 992; * * * Radcliffe v. Chaves, 15 N. M. 258, 110 Pac. 699." Halford Ditch Co. v. Independent Ditch Co., 22 N. M. 173, 159 Pac. 861.

See, also Crawford v. Gurley, 23 N. M. 659, 170 Pac. 736.

We agree with the contention of the plaintiff in error that the admission of the mere opinion of a non-expert witness as to the insanity or mental weakness of a person cannot be given without the facts upon which he bases such opinion and the preliminary evidence to show that he had been in a position to observe such person about whose mental condition he testifies, in order that the court or jury will have before them all of the facts upon which the non-expert witness bases his opinion. But this question cannot be properly considered by us in this case for the reasons above stated.

[3] The same rule applies to the introduction of the copy of the alleged will. This will was introduced for the purpose only of showing the mental weakness of the plaintiff. The loss of the original will was not accounted for, nor is there any rule of law that gives to a certified copy of an instrument which is not entitled to record any more weight than is given to ordinary hearsay evidence. We hold that the copy of the alleged will was improperly admitted, but the error complained

of is not one of which the plaintiff in error can take advantage, as before stated.

From the case as a whole, after having carefully read the voluminous record, we find no reversal error therein. The case is therefore affirmed; and it is so ordered.

PARKER, C.J., and ROBERTS, J., concur.