CENTRAL MEAT MARKET v. LONGWELL'S TRANSFER, Inc.

No. 2652.

Court of Civil Appeals of Texas. El Paso.

Nov. 12, 1931.

Rehearing Denied Dec. 3, 1931.

Harrison, Scott & Rasberry, of El Paso, for plaintiff in error.

C. W. Croom, of El Paso, for defendant in error.

WALTHALL, J.

This case was tried to the court without a jury. The evidence upon which the facts are found by the court is uncontroverted. The facts show that early in May, 1931, the president of Central Meat Market Company, plaintiff in error, hereinafter designated as plaintiff, left its automobile with defendant in error, hereinafter called defendant, a public garagekeeper of automobiles for hire. ·Defendant gave the plaintiff a claim check on which were printed the words: "Not responsible for loss by fire or theft." Defendant also had on display in ·its garage three large signs with words thereon similar to those on the claim check. Plaintiff's president received the claim check, but did not observe the said signs nor read the words on the claim check.

After the car had been in the garage a day or two, plaintiff's president presented the claim check at the garage and demanded the car, and, after a search of the garage, the car was not found, and plaintiff's president was informed that the car was not in the garage.

Under the evidence heard on the trial, the court found that the car had been stolen, and that defendant had exercised ordinary care

for the safety of the car against theft, and entered judgment for defendant.

Plaintiff prosecutes this appeal from that judgment by. writ of error.

### Opinion.

Plaintiff submits the law to be that in every contract of bailment there exists the obligation on the part of the bailee to return the property to the bailor upon demand at the expiration of the bailment; that a bailee who receives an automobile to store for hire is liable to the bailor for loss of the automobile through misdelivery to a third person, regardless of the question of negligence of the bailee, and refers us to Potomac Ins. Co. v. Nickson, 64 Utah, 395, 231 P. 445, 42 A. L. R. 128, by the Supreme Court of Utah; and cases there cited. We might state here that in that case the claim check contained no exception as to theft. The case otherwise seems to be in point.

Omitting the provision of the claim check as relieving the bailee defendant from liability for theft of the car, on the proposition submitted by plaintiff the courts are not uniform in their holding, and state there are exceptions to the rule announced by plaintiff as to the liability of the bailee.

In volume 6, C. J. p. 1140, par. 93, it is said that it is a sufficient excuse for nondelivery, or misdelivery, that the bailed property has been lost or destroyed without fault of the bailee, and, among the circumstances that would relieve the bailee of liability, is theft of the property without negligence on the part of the bailee.

In the same volume of C. J. at page 1121, par. 61, it is said that, in the absence of a special contract, the bailee is responsible only for ordinary care. To the same effect is R. C. L. vol. 3, p. 116, par. 38. The question presented has frequently been before our Texas courts.

In the early case of Mims v. Mitchell, 1 Tex. 443, in the instance of a hired slave girl, the court said the hiring for a definite period being admitted, "the law implies a promise to redeliver the slave when the time had elapsed. * * * By the contract of hiring it was incumbent on the defendant to treat the hired slave with due care. Less than ordinary care and diligence would render him responsible for any loss or injury which might accrue to the plaintiff. * * * When the period of the hiring had elapsed, or when called upon, it was his duty to redeliver the slave, or to account for his default, by showing the death of the slave or some casualty which placed it beyond his power to redeliver her. But when ·such casualty or accident is shown, the burden of proof of the negligence is thrown upon the plaintiff; and the

defendant will not be bound affirmatively to prove that he used reasonable care." To hold otherwise would make the bailee an insurer of the safety of the property bailed, which seems not to be the law with us unless the bailee so contracts.

In Staley v. Colony Union Gin Co. (Tex. Civ. App.) 163 S. W. 381, 383, the Amarillo court quoted with approval from the cases cited, in which it is said:

"Where the property is stolen the bailee is not liable unless he was guilty of gross negligence in his care of it;" and "proof that the property has been stolen without ordinary neglect on the part of the bailee is a good defense for him."

Again, "A cotton ginner is held only to ordinary diligence and care in the custody of cotton delivered to him to be ginned, and if it was stolen without his fault, it would be an excuse."

■ Without quoting therefrom, the following cases, in effect, announce the same rule of liability as does the Staley v. Colony Union Gin Co. Case, supra. Exporters and Traders Compress & Warehouse Co. v. Schulze, 265 S. W. 133, by the Commission of Appeals, holding that where one storing cotton with warehouse sued for its return on his receipt, and warehouse company showed that the cotton was destroyed by fire, the burden was on plaintiff to show that the fire was the result of negligence of the warehouse. Munger Automobile Co. v. American Lloyds of Dallas (Tex. Civ. App.) 267 S. W. 304, the court referred with approval to Staley v. Colony Union Gin Co., supra; Hislop v. Ordner, 28 Tex. Civ. App. 540, 67 S. W. 337; Texas Jurisprudence, vol. 5, p. 1025–6, par. 15, and cases there cited. If the claim check is construed as a contract exempting defendant from liability for theft, such contract would not have the effect to exempt it from the implied obligation to use ordinary care to prevent theft. Langford v. Nevin, 117 Tex. 130, 298 S. W. 536; Timmins v. Schroeder (Tex. Civ. App.) 26 S.W.(2d) 664.

■ From the above authorities, we have concluded that admitting the theft of the car as found by the court, the crucial test of defendant's liability is: Does the evidence show the exercise of ordinary care on the part of defendant to safeguard or prevent the theft of the car?

Our courts are not uniform in their holding as to where the burden of proof rests on the question of ordinary care. However that may be, plaintiff assumed the burden and offered the evidence on that issue.

C. B. Sampson, president of Longwell's Transfer Company, Inc., testified for plaintiff. Stated the precautions taken to keep the automobiles stored from theft; no strangers were permitted to go back in the garage unless accompanied by somebody; explained the use of claim checks; have reliable men, some one at the front to receive cars at all times, no one takes a car out without a claim check; "we do everything we possibly can to preserve the cars"; during the eleven years witness has been with Longwell's this is the only instance of a car being let out; knows nothing personally of what happened in this particular case. Said: He had made an investigation, and had an investigation made as to how that car got out of the garage; he found that a former employee of his at the garage, naming him, came into the garage the night before; that he, the former employee, stole, or by stealth, or somehow got hold of another claim check, and then changed the claim checks on this particular car. Witness said he did not know how he got the claim check, but that is what he did; after changing the claim check the former employee did not present the changed check to defendant's night watchman on duty, but another man presented the changed claim check for the car, and defendant's man delivered the car to him.

M. F. Boon, testified for plaintiff: Was helper at the garage, and on the occasion in question was night foreman. Witness saw the former employee referred to by Sampson; was at the garage that Saturday evening (before the car was taken that night); usually that boy helped out on Saturday, in case an extra man was needed; was not helping that Saturday; if help was needed the boy was used; there were two of the boys; they were at the garage by permission, helping if needed and paid for their work; both had worked at the garage; they were at this time laid off on account of business conditions; these boys got a claim check, don't know how they got it. Witness said: "As to whether or not they took the claim check, went back to the back part of the garage and put the claim check on this car, well, I didn't see them. That is what we figured out what they did. One of them didn't come back to me and present the claim check. I don't know the man who presented the claim check; he came in there, (the garage) but I don't know him from any one else. He presented the check to me and I took it, then I delivered him the car on that claim check; * * * it was the one that had been changed on the automobile; I had never seen this man before, * * * I didn't receive the car from Mr. Swartzman (the plaintiff's president). When it was brought in one of the helpers there received it."

Without further quoting from the evidence, the court found that customers of the garage when storing a car are given a claim check with a number on it, and the other half of the claim check is tied on the car, and the car is then carried to the rear of the garage and there stored; the car is delivered to the customer on the presentation of the claim check; that the two former employees were in good

repute with defendant, and had been dismissed from defendant's service in cutting down expenses; that no one but employees were permitted by defendant or its employees to go in the back part of the garage unless accompanied by some employee; that unused claim checks were kept in a box near the center of the garage, the box tacked to a column. The court found that one or both of the former employees of defendant secured a blank claim check, and by that means through a third person, unknown to defendant's night man, secured the possession of the car.

The court concluded that the possession of the car was obtained by theft, and that defendant had exercised ordinary care for its safety, and so entered judgment for defendant.

Plaintiff submits that in allowing the two former employees to loiter about the garage, and in keeping the unused claim checks easily accessible to persons loitering about the garage, such acts of defendant were negligence as a matter of law.

Such acts are not in violation of any statute or ordinance prescribing such duty on the part of a keeper of a public garage for the safety of stored cars, and therefore are not negligence as a matter of law, as submitted.

The trial court found that defendant exercised ordinary care for the safety of the car against theft, and we are not prepared to say that such finding or conclusion is not supported by the evidence. The facts and circumstances disclosed by the evidence conclusively show that the car was stolen from the garage, and the crucial test of defendant's liability then becomes one of the exercise of ordinary care. The evidence does not show that defendant had any cause to even suspicion or doubt the honesty of either of the two former employees, if either made use of the unused checks as a means to get possession of the car; nor does the evidence show that the unused checks were not kept in a reasonably safe place.

The court failed to make additional findings of fact and conclusions of law on written request of plaintiff, and plaintiff assigns error.

The court found the ultimate issue of negligence in defendant's favor. The findings requested were merely evidentiary upon that ultimate issue. The court is not required to make findings upon mere evidentiary issues, nor is it required to file conclusions upon every minor issue of law presented by a case, such as to where the burden of proof rests.

Plaintiff suggests that the evidence was largely hearsay, and for that reason would not support a finding of ordinary care on the part of defendant.

Plaintiff offered the testimony of Sampson and Boon, the only witnesses who testified to the facts from which theft and ordinary care are shown. The evidence of Sampson may be classed largely as hearsay. The evidence of Boon is less so, but only partly hearsay. No objection was made to the evidence. The testimony of each, in part, we think, is more in the nature of the opinion, or conclusion, of the witness and where the facts from which the opinion is found are not developed or stated, and objectionable, but where admitted without objection, it may not be without probative force as is purely hearsay evidence. That plaintiff did not object to the evidence, but offered it as showing all of the facts and circumstances under which the car was taken from the garage, presents a different question, we think, to what it would be had defendant offered the evidence, and not objected to by plaintiff. Plaintiff pleaded that defendant breached its implied contract "in mis-delivering such car and personal property" to a person unknown to plaintiff. For reasons stated, we do not think the case is ruled by Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, 538, where it is said that purely hearsay "incompetent testimony can never form the basis of a finding of facts in an appellate court, notwithstanding its presence in the record without objection." Boon testified to the facts largely within his own knowledge, as to the presence at the garage of the two unemployed boys, the use made of claim checks, the use made of the two boys at the garage, the presentation to him of the claim check by the man who got the car, and the delivery to him of the car, the way cars are received in the garage, and delivered on the checks presented.

We have concluded that the record presents no reversible error, and the case is affirmed.