23 P.(2d) 370

### SALAZAR v. GARDE.

No. 3806.

Supreme Court of New Mexico.

June 20, 1933.

H. O. Waggoner, of Albuquerque, for appellant.

Geo. W. Prichard, of Santa Fé, for appellee.

SADLER, Justice.

This is the second appearance of this case in the Supreme Court. See 35 N. M. 353, 298 P. 661, for former opinion. It was an action to recover damages for breach of partido contract under which a flock of sheep had been delivered by defendant into the care and possession of plaintiff, who is again appellee before us. The defendant claiming violations of the partido by plaintiff sought to justify his act in repossessing the sheep and himself claimed damages by cross-complaint.

The first trial resulted in a verdict for plaintiff in the sum of $2,261.30 upon which judgment was entered. An appeal to this court resulted in the award of a new trial. At the new trial a second verdict for plaintiff in the reduced sum of $1,000 followed,

and from the judgment entered thereon this appeal is prosecuted.

The defendant (appellant) devotes almost his entire brief to claimed error on the part of the trial court in declining to dismiss plaintiff's complaint or to direct a verdict in favor of defendant, interposed at the close of plaintiff's case in chief. The ground urged in support of each motion was that it appeared by the evidence that plaintiff was no longer the real party in interest, having assigned his cause of action to his attorney, George W. Prichard, Esquire, and to his nephew, Frank Salazar.

The facts regarding the claimed assignment were developed in testimony before the court out of the presence of the jury after plaintiff had rested. The defendant called plaintiff to the stand and proved the existence of a written assignment by plaintiff to the assignees named of the judgment first recovered, executed within a day or two following its rendition and before the allowance of any appeal therefrom.

The plaintiff countered with his own testimony and that of his attorney tending to show that the assignment was merely to secure his attorney and plaintiff's nephew in certain indebtednesses then owing them, to the attorney for services rendered in this and other matters, and to the nephew on other accounts, the surplus, if any, to be paid over to the plaintiff; that it was an assignment of the judgment only, not intended to pass the cause of action to the assignees, and, at least, so far as the attorney and the plaintiff were

concerned, had been considered mutually rescinded since the reversal of the judgment which was the subject of the assignment.

█ The defendant is in no position to complain of the court's ruling upon his two motions directed to this point. As noted, all of the facts bearing upon the subject were fully developed at the close of plaintiff's case in chief and before defendant had introduced any evidence on the merits. When the facts were thus disclosed, counsel for defendant, before proceeding with the merits of his defense, invoked the trial court's ruling on the sufficiency of the matter adduced in abatement of the action. The ruling was adverse to him. Two courses were then thrown open, viz., either to stand upon the ruling and abide the result, subject to his right of review; or waive the ruling and take up the merits. He chose the latter course, perhaps not conscious that he was making an election, but nevertheless doing so just as effectively in law by his course of action as though intended, and may not now complain on account thereof. 1 C. J., Abatement and Revival, § 599; Patton v. Walker, 35 N. M. 468, 1 P.(2d) 566.

The author of the text in 1 C. J. 273 thus states the rule, to wit: "Where a plea or other objection in abatement is overruled, defendant must stand by it if he would take advantage of the objection, and he waives it if he pleads in bar or otherwise appears to the merits."

█ Error is next predicated upon the court's refusal of certain instructions requested by the defendant. Two of the facts most vigorously contested in the evidence at the trial were whether plaintiff had furnished proper pasturage for the sheep, and whether he had permitted them improperly to intermingle with other sheep. It was covenanted by plaintiff in the contract that he would "carefully herd, graze, feed, shelter * * * and in all respects properly care for the said sheep and the products thereof, in such a manner as a prudent sheep owner would care for his sheep." Also, "that the said party of the second part (plaintiff) shall not during the term of this contract, have any other sheep than those covered by this contract in his care or custody, either on rent or shares, or otherwise."

After quoting these contract provisions in paragraph 11 of its general charge, the court instructed the jury that before plaintiff could prevail the jury "must be satisfied by a preponderance of the evidence that he has complied faithfully, substantially and reasonably with his undertakings as set forth in said paragraphs First and Fifth of the contract as above set forth." And by paragraph 13 of the general charge that:

"If up to and on the 14th of March, 1929, the plaintiff had not faithfully, substantially and reasonably complied with his said undertaking, then by the terms of paragraph sixth of the said contract, set forth above, it was optional on the part of the defendant to terminate the contract," etc.

The requested instruction dealing with this phase of the contract, after reciting the un-

dertaking, states: "If, therefore, you believe from the evidence in this case that the plaintiff did not take good care of said sheep, nor provide them with feed, good grazing ground, pasture or shelter, so that they were in danger of dying or depreciating in value or in their increase, then you will find the defendant was justified in taking them from the plaintiff, and if you so believe, you will find the issues herein in favor of the defendant."

It is to be observed that the standard of care required of plaintiff, in so far as want of such care might afford grounds for rescission, was to look after the sheep "in such a manner as a prudent sheep owner would care for his sheep." It was issuable at the trial whether the range furnished by plaintiff was not as good as that of other sheepmen in that vicinity and whether the condition of these sheep at the time they were repossessed did not compare favorably with those of other sheepmen in that section of the country. It also appeared from plaintiff's testimony that he had just made purchases of feed for the flock to begin feeding, when the sheep were retaken.

The requested instruction wholly ignored performance of these covenants within the standard of care set by the contract. If the plaintiff failed "to provide them with feed," defendant was to recover, notwithstanding a prudent sheepman in the care of his own sheep might not have planned to begin feeding earlier than did plaintiff. If he furnished such pasturage for the number of sheep involved as a prudent sheepman in the care of his own sheep would supply, considering range conditions, there was performance within the contract, although the requested instruction was not so qualified.

The given instruction upon this subject although somewhat more general than that requested, within its language necessarily limits the jury in its consideration of the evidence to the standard of care fixed by the contract. No specific objection was taken to the given instruction, and the one requested being improper there was no error in refusing it.

■ Upon the issue whether plaintiff had violated the covenant against having other sheep in his care or custody, "on rent or shares, or otherwise," it appeared that plaintiff's range was adjoined by the lands of a neighboring sheepman between whose holdings there was no fence; that on occasions the sheep of one or the other would cross the line and intermingle. Plaintiff testified that such intermingling was without his consent. At the time defendant repossessed the sheep they were so intermingled in plaintiff's pasture. The requested instruction touching this issue, as we interpret it, attempting no definition of "care or custody" as used in the contract, would in effect have charged the jury as a matter of law that the occasional intermingling under circumstances testified to by plaintiff was a breach of the contract. It could not be said to be such as a matter of law. We think there was no error in refusing this requested instruction.

The court's refusal of other requested instructions is also complained of, but a care-

ful consideration of the argument under these points fails to convince us of merit in the contentions. The judgment appealed from will therefore be affirmed, and the cause remanded, with directions to the lower court to render judgment in favor of plaintiff against the sureties on the supersedeas bond for the amount of the judgment appealed from and for plaintiff's costs.

It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.