151 P.2d 48

CONSOLIDATED PLACERS, Inc., v.
GRANT.

No. 4819.

Supreme Court of New Mexico.

Aug. 14, 1944.

Alvan N. White and Clyde T. Bennett, both of Silver City, for appellant.

J. F. Woodbury and Ben Shantz, both of Silver City, for appellee.

THREET, Justice.

This is a creditor's suit brought by appellee against appellant to set aside certain conveyances made by one May McGraw to appellant, Michael J. Grant, and subject the property, described therein, to the payment of its judgment. From a judgment in favor of appellee, appellant appeals.

Facts, as found by the trial court, necessary to a decision on the questions raised by appellant, are:

"That plaintiff is a corporation, organized and existing under and by virtue of the laws of the State of Colorado and duly authorized to do business and doing business in the State of New Mexico. On or about the 14th day of September, 1936,

plaintiff brought suit against May McGraw in the above entitled cause and recovered judgment in the sum of $2500.00, together with interest and costs on the 10th day of July, 1939. During the pendency of this suit and prior to final judgment May McGraw, without consideration and with intent to hinder, delay and defraud the plaintiff in the collection of its judgment, disposed of all her property in the following manner, to-wit: To Michael J. Grant a chattel mortgage covering her personal property consisting of furniture, household effects and fixtures; and a warranty deed conveying all of her real estate located in Grant County, New Mexico, except 40 acres. To W. R. Goss bills of sale conveying a power shovel, all cattle and horses and a Pontiac car. The expressed purpose of May McGraw in making the transfers was to divest herself of the personal property so that plaintiff would be unable to satisfy its judgment therefrom; and that W. R. Goss held the personal property as a secret trustee for May McGraw, for her use and beneficial interest, and upon a subsequent sale of the power shovel and cattle May McGraw received the purchase price thereof.

"Prior to the stipulation for a judgment and the entry thereof against May McGraw, she closed out her checking account in the First National Bank at Silver City, New Mexico, and thereafter kept currency in a safety deposit box in the bank. That, after making all of the transfers and mortgage, May McGraw by stipulation of her attorney, allowed judgment to be entered against her without trial upon the merits. The conveyance, transfers and mortgage, aforesaid, operated to divest May McGraw of all legal title in any property out of which plaintiff's judgment could be satisfied, thereby causing her to be insolvent. After making the conveyance, transfers and mortgage, May McGraw had no other property of any kind out of which plaintiff's judgment could be satisfied; and from the date thereof until the date of her death she acquired title to no other property, either real or personal, in an amount sufficient to satisfy plaintiff's judgment; and to have caused execution to issue at any time during such period to satisfy the judgment would have been futile and ineffective.

"The court further found that the chattel mortgage and the warranty deed were accepted and received by the defendant, Michael J. Grant, with the knowledge of the fraudulent intent of May McGraw, and with the intent on his part to assist May McGraw in and for her fraudulent purpose, and to hold the real and personal property as a secret trust for her benefit.

"Subsequent to the entry of the judgment on July 11, 1939, it was discovered that a certain parcel of the May McGraw ranch had not been included in the deed of January 31, 1939; that a transcript of the plaintiff's judgment had, by that time, been filed for record and recorded in the office of the County Clerk of Grant County, New Mexico; that to avoid the lien of plaintiff's judgment and with the intent to further defraud plaintiff, May McGraw executed a

so-called 'correction deed' to the defendant Michael J. Grant.

"That, after the conveyance of the real estate to her brother, Michael J. Grant, May McGraw retained possession, residing thereon and treating the premises, in all respects as her own, and Michael J. Grant never took possession nor resided upon the premises so conveyed.

"No consideration was paid by Michael J. Grant for the conveyance to him of the premises; that there was no cancellation by the defendant of any written security given by May McGraw, or any written release by the defendant of any unsecured claim held by him against May McGraw.

"On the 12th day of February, 1942, the defendant, Michael J. Grant, was appointed administrator of the estate of May Mc-Graw, deceased, and in his petition for such administration, stated that the assets of the estate consisted solely of personal property of the probable value of $800.00. On the first day of June, 1942, plaintiff filed proof of claim based upon its judgment against May McGraw which was approved by the probate court as a claim against her estate in the sum of $2500.00, together with interest and costs.

"The court further found that plaintiff's claim 'against the estate of May McGraw, deceased, is wholly unsatisfied, and there is now due and owing to plaintiff the sum of $2512 with interest at the rate of 6% per annum, since July 10, 1939. That plaintiff has been diligent in filing its case and

there has been no substantial change in the value of the property or the relationship or the position of the parties since the rendition of the judgment in cause No. 9077. That the action was brought within a reasonable time."

Based upon these findings, the trial court concluded that the warranty deed executed on the 31st day of January, 1939, by May McGraw in favor of appellant, Michael J. Grant, and the correction deed executed on the 6th day of February, 1940, by May Mc-Graw in favor of appellant, Michael J. Grant, were fraudulent and should be set aside; and that appellee was not guilty of laches in bringing its suit.

Appellant's forty-eight assignments of error are considered under seven points set forth in his brief in chief, the first of which is as follows: "One of the material issues in this case was the corporate existence of the appellee. There being no proof offered to establish the corporate existence of the appellee, the court erred in its third finding of fact."

The question here challenges the trial court's finding that appellee was a Colorado corporation, duly authorized to do business in the State of New Mexico; and the court's refusal to adopt appellant's first conclusion of law that the action should be dismissed for the reason that appellee failed to show that it had authority to maintain the suit.

This question was before the Territorial Supreme Court in the case of Butterfield's Overland Dispatch Co. v. Wedeles and

Romero, 1 N.M. 528, where the court had under consideration the construction of Sec. 29 of Art. 12, Chapter 27, Civil Procedure and Practice, being page 198 of the Revised Statutes and Laws of the Territory of New Mexico, as follows: "The order of pleading shall be as follows, that is to say: 1st, legal exceptions; 2d, pleas in abatement, (1) to the jurisdiction as to the subject matter, (2) as to local jurisdictions, (3) as to the disability or misnomer of the person, either the plaintiff or the defendant; 3d, answer in bar of the action."

This statute was carried forward and was incorporated in the 1929 Compilation as Sec. 105-408 of Civil Procedure, and remained a statute of pleading, practice and procedure until 1933 when it became a rule of court, following the adoption of the omnibus rule, pursuant to the passage of Chap. 84 of the 1933 New Mexico Session Laws. Section 105-408, Rules of Pleading, Practice and Procedure, 38 N.M. XVIII; State v. Beal, 48 N.M. 84, 146 P.2d 175.

█ The foregoing rule was amended and superseded by a rule of the same number effective September 11, 1939, Rules of Pleading, Practice and Procedure, 43 N.M. IX. However, the only change made in the statute, or rule, by the amendment of September 11, 1939, was to eliminate the particular instances set forth in the statute, and the rule, in which pleas in abatement might be used. The case at bar having been filed on March 9, 1942, was pursuant to an order entered by this court September 22, 1942, 46 N.M. LXXXIV, Rules of Civil Procedure, controlled by the provisions of trial court Rule 105-408 effective September 11, 1939, 43 N.M. IX, supra. The material portions reading as follows:

"The order of defensive pleadings and motions shall be:

"I. The motion to quash the process or service;

"II. Pleas in abatement;

"III. The demurrer;

"IV. Motions to strike, to make definite and certain, or otherwise to compel conformance to law or rules;

"V. The answer.

"By filing any of such motions or pleadings the party shall be deemed to have waived the right to file any pleading or motion of higher order."

In Butterfield's Overland Dispatch Co. v. Wedeles and Romero, supra, the Territorial Supreme Court, in construing the statute, which later became a rule of court, under which the case at bar was tried, said:

"The second cause of error assigned by the defendants is that 'the court below erred in allowing the notes sued on to go to the jury without proof of the plaintiffs' right to sue in a corporate capacity.' On this point counsel for defendants presented a number of state authorities, that, were we bound by no provisions or decisions of the supreme court of the United States, we would feel inclined to respect. Section 29 of the Revised Statutes of New Mex-

ico, p. 198, disposes of this question. This section provides that the right of a plaintiff to sue is to be tested by a plea in abatement, which is in perfect harmony with the decisions of the supreme court on this subject.

"In the case before us, no plea in abatement appears to have been filed, denying the capacity of the plaintiffs to sue. Defendants filed their plea of general issue, which admits the competency of the plaintiffs to sue in the capacity in which they have sued: Society, etc., v. Town of Pawlet, 4 Pet. [480], 501, [7 L.Ed. 927]; Conard v. Atlantic Ins. Co., 1 Pet. 386, 387, [7 L.Ed. 189]."

In the instant case, appellant failed to comply with the rule by filing his plea in abatement, but attempted to raise the issue, of the corporate capacity of appellee to maintain its suit, in his answer, by denial upon information and belief. This amounted to a general denial, which admitted the capacity of the appellee to maintain the suit. Butterfield's Overland Dispatch Co. v. Wedeles and Romero, supra; 13 Am.Jur. p. 1080, Sec. 1168; Nultorpor Co. v. Reed, 122 Or. 605, 260 P. 203, 55 A. L.R. 504.

Rule 105-408, supra, under which this suit was brought, further provides that "by filing any such motions or pleadings the party shall be deemed to have waived the right to file any pleading or motion of higher order." When appellant filed his answer, he waived the right to question appellee's capacity to maintain this suit. This was tantamount to pleading over to the merits after a plea in abatement was overruled. In Salazar v. Garde, 37 N.M. 352, 23 P.2d 370, 371, in quoting from 1 C.J. 273, we said: "Where a plea or other objection in abatement is overruled, defendant must stand by it if he would take advantage of the objection, and he waives it if he pleads in bar or otherwise appears to the merits." See also Patton et al. v. Walker, 35 N.M. 468, 1 P.2d 566.

Absent a proper plea in abatement, challenging its corporate capacity, it was not incumbent upon appellee to prove its right to sue as a corporation. In Butterfield's Overland Dispatch Co. v. Wedeles and Romero, supra, it was held: "In an action by a corporation on a note where the general issue is pleaded, the plaintiff is not required to prove its rights to sue as a corporation, before introducing the notes in evidence, and the defendant can only test the plaintiff's capacity to sue by a plea in abatement."

Appellant maintains that the pleadings in the case at bar are controlled by 1941 Comp. Sec. 19-101 rules 8(b) and 12 (b), Rules of Civil Procedure, and argues that he had the right to raise the issue of the corporate capacity of appellee to maintain its suit by a general denial of any knowledge or information thereof sufficient to form a belief as to the truth of the averment. With this contention we cannot agree. As heretofore pointed out, the rule of pleading, practice and proce-

dure controlling, at the time this suit was filed, was rule 105-408, effective September 11, 1939. However, assuming, but not conceding, that appellant is correct in this contention, he has failed to comply with 1941 Comp. Sec. 19-101, rule 9(a), Rules of Civil Procedure, which provides that: "* * * When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

Paragraph four of appellant's answer which sought to put in issue the capacity of appellee to maintain this suit is in the following language: "Answering the allegations contained in paragraph 1 of plaintiff's first amended complaint, the defendant alleges and states that he does not have sufficient information upon which to form a conclusion as to the truth or falsity of the allegations therein contained and he, therefore, denies each and every material allegation therein contained."

■ This is not such a specific negative averment with supporting particulars within the pleader's knowledge as to satisfy the rule. In Joint Stock Co. of Volgakama Oil & Chemical Factory v. National City Bank of New York, 210 App.Div. 665, 206 N.Y.S. 476; Id., 240 N.Y. 368, 148 N.E. 552, the court held: "Under a statutory provision that plaintiff need not prove the existence of the corporation, unless the answer contains a specific allegation that plaintiff or defendant, as the case may be, is not a corporation, an answer, alleging on information and belief that plaintiff is not a corporation, is not a "specific allegation" of corporate non-existence. See also 19 C.J.S., Corporations, § 1327, p. 1019.

■ It is the general rule, supported by the great weight of authority, that a denial in an answer of knowledge or information sufficient to form a belief as to the truth of an allegation of plaintiff's corporate existence does not put such allegation in issue. 19 C.J.S., Corporations, p. 1019, § 1327; Multorpor Co. v. Reed, supra; Bank of Enoree v. Yarborough et al., and Woodruff Oil & Fertilizer Co. v. Yarborough et al., 120 S.C. 385, 113 S.E. 313; First Trust Joint Stock Land Bank of Chicago v. Kruse, Iowa, 255 N.W. 646.

It will be observed that 1941 Comp., Sec. 19-101, rule 9(a), Rules of Civil Procedure, supra, makes no substantial change in the requirement that the capacity of a corporation to maintain a suit shall be tested by an affirmative plea in abatement as required under rule 105-408, supra, which was in effect and controlling at the time this suit was instituted. It, therefore, follows that there is no merit in appellant's first, second, seventeenth and thirty-third assignments of error.

■ It is next urged that the evidence does not support the findings of the trial court; and that the court erred in refusing

appellant's requested conclusion of law that the insolvency of the estate of May McGraw was no presumption that she was insolvent at the time of the conveyance; and in refusing appellant's requested conclusion of law that a debtor can prefer one of his creditors against the others; and that a conveyance or mortgage in payment of a debt is a sufficient consideration. It is a well-established rule of this court, supported by numerous decisions, that we are bound by the trial court's findings of fact when supported by substantial evidence. Taylor v. Sarracino, 44 N.M. 469, 104 P.2d 742; Everett v. Gilliland, 47 N.M. 269, 141 P.2d 326.

The transcript of testimony in the case at bar is voluminous and no good purpose would be served in setting it forth in detail here. Suffice to say, having examined the record and there being substantial evidence to support the findings attacked by appellant, we are bound thereby.

Appellant's argument that the trial court erred in refusing his several requested conclusions of law, above set forth, is untenable. While the requested conclusions of law are, perhaps, correct statements of abstract law, they are palpably at variance with the facts found by the trial court. Conclusions of law must be predicated upon, and supported by, findings of fact. 64 C.J. 1254; Friedli v. Friedli, 65 Utah 605, 238 P. 647; Parrott Bros. Co. v. Ogden City, 50 Utah 512, 167 P. 807; Needham v. First National Bank of Salt Lake City, 96 Utah 432, 85 P.2d 785.

Since the findings of fact are supported by substantial evidence the trial court did not err in refusing appellant's requested conclusions of law which are at variance with the facts so found.

Appellant claims error in the trial court's refusal to adopt his requested finding of fact No. 8, to-wit: "That on the said 31st day of January, 1939, and for a long time prior thereto, the defendant was a creditor of the said May McGraw and the said May McGraw executed the said conveyance in payment of indebtedness due the defendant" and to make his corresponding conclusion of law No. 5, to-wit: "That a debtor can prefer one of his creditors against the others and a conveyance or mortgage in payment of a debt is sufficient consideration."

He argues that the case of Retsch v. Renehan, 16 N.M. 541, 120 P. 897, relied upon by appellee, has no application to the case at bar. Whatever may be said concerning the rule in Retsch v. Renehan, supra, or the construction placed thereon in Third Pomeroy Equity Jurisprudence, 5th Ed., 31, since, Field v. Otero, 32 N.M. 338, 255 P. 785, and Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426, we are committed to the doctrine that payment of a pre-existing debt is a valuable and adequate consideration for the transfer of property. That question, however, in the case at bar, becomes immaterial in view of the trial court's finding that both the grantor and grantee in the deeds were guilty of fraud. In Magee v. Miller, 37

N.M. 293, 22 P.2d 118, we held that the payment of a valuable consideration will not avail as a defense if the creditor can further show that the grantee had knowledge of the fraud, or knowledge of facts so suggestive of fraud as to put him on inquiry. The trial court having found fraud on the part of both the grantor and grantee, it was not error to refuse to adopt the requested finding of fact and to make the requested conclusions of law.

■ Every presumption is indulged in favor of the correctness of the judgment. Sandoval v. Unknown Heirs of Vigil, 25 N.M. 536, 185 P. 282; Lincoln-Lucky & Lee Mining Co. v. Hendry, 9 N.M. 149, 50 P. 330. We will not undertake to search the mind of the court to determine exactly upon what ground the court found fraud. If there be substantial evidence to support the decision upon any ground it will stand. Grissom v. Grissom, 25 N.M. 518, 524, 185 P. 64.

■ Under point six appellant contends that "The court erred in finding that appellee had been diligent in filing its case and that the action was brought in a reasonable time, and that appellee had not been guilty of laches." This suit was instituted two years and eight months after the execution of the deeds in question by May McGraw, grantor to appellant-grantee, which was well within the statutory period of limitation. 1941 Comp. Sec. 27-104. The trial court found that appellant was diligent in filing its suit, and no substantial change in the value of the property, or the relationship, or the position of the parties, had intervened since the rendition of the judgment which is the basis of this suit. Appellant concedes that mere delay without any changed condition is insufficient to call forth the equitable doctrine of laches, but urges that the death, or the absence, of a witness is always considered in applying laches to stale claims, especially where a party to a transaction has died, and argues that the death of May McGraw, grantor in the deeds to appellant, on February 7, 1942, approximately two months before appellee instituted its suit, was sufficient for the trial court to apply the doctrine of laches in that appellant had been denied the benefit of the testimony of May McGraw, deceased.

■ In Patterson v. Hewitt, 11 N.M. 1, 66 P. 552, 55 L.R.A. 658, it is held that a change in relationship of parties and the death or absence of the witness are considered by the courts of equity in applying laches to stale claims. Death or absence of material witnesses, like lapse of time, is not sufficient within itself to invoke the doctrine of laches. It is only where it would be impossible for the trial court to arrive at a safe conclusion as to the truth of the matter in controversy and do justice between the parties, that the doctrine will be invoked. 30 C.J.S., Equity, § 119, p. 542. Shirley, Highway Commissioner, et al. v. Van Every, 159 Va. 762, 167 S.E. 345, 350, it is said: "Loss of evidence is another test, as is the death of parties. See 6 Michie's Digest, p. 605, citing many cases. But

death alone is not sufficient and the loss of evidence must have been material. A contract vendor might die the day after his promise; of course, his death would not defeat it. Evidence lost must have been sufficient to tip the scales."

In the case at bar, appellant could not ask more than we assume for him, that May McGraw, if alive, would have corroborated his testimony as to the facts and circumstances surrounding the transaction in question and the conveyance of the property. If she had testified as appellant did, her testimony could not affect the conclusions arrived at by the trial court and which we here affirm.

The controlling question here is whether the appellant should be permitted to take advantage of the defense of laches in view of the allegations of the complaint and the findings of the court, viz., that the appellant accepted the conveyance with knowledge of the fraudulent intent on the part of May McGraw and with the intent on his part to assist her fraudulent purposes, and to hold the property as a secret trust for her use and benefit. In 30 C.J.S., Equity, § 127, p. 550, the general rule is: "A delay is excusable where it was induced by the adverse party; he cannot take advantage of a delay which he himself has caused or to which he has contributed, especially where actual hindrance has been caused by his fraud or concealment, * * *."

In Shea v. Shea, 296 Mass. 143, 4 N.E. 2d 1015, 1018, it is said: "* * * Defense of laches is founded on principles of equity and inequitable conduct of a defendant may be such as to make it unjust that he should have advantage of such a defense. * * *"

In Triplex Safety Glass Co. of North America v. Kolb, D. C., 53 F.2d 1062, 1065, the court said: "The doctrine arises from the inequity of enforcing an equitable remedy where there has been unreasonable and prejudicial delay on the part of the plaintiff. It merges into the doctrine of equitable estoppel, but is broader than that, in that it has been applied in cases where the only prejudice to defendant which can be shown is that which the general experience of mankind shows usually to arise upon protracted delay in the assertion of adverse rights. It will not ordinarily be applied in favor of a fraudulent or even a conscious wrongdoer."

In Diamond v. Connolly, 9 Cir., 251 F. 234, 235, it is said: "Where defendant was guilty of fraud, a court of equity should be reluctant to deny relief, merely on the ground of laches."

In the case at bar, the court found that the defendant accepted the conveyance with the fraudulent intent to assist May McGraw in defrauding her creditors. Since the findings of fact are supported by substantial evidence, it would be inequitable to permit appellant to take advantage of the defense of laches, where the suit has been instituted within the statutory period of limitations; and especially where no change in the value of the property or the relation-

ship of the parties, and rights of third parties have intervened, thus benefiting from his own fraud. Fraud vitiates everything it touches. In re Daub's Estate, 305 Pa. 446, 157 A. 908, 81 A.L.R. 735.

There is no merit in appellant's point seven, to-wit: "The court erred in refusing appellant's conclusions of law that the burden was on the appellee to establish the existence of fraud and that the existence of fraud must always be proved distinctively and satisfactorily by clear and convincing evidence and that the law always presumes in favor of honesty."

This, no doubt, is a correct statement of the law, and we must assume that the trial court so understood and correctly applied the rule as to the burden of proof in the trial of this case. It was unnecessary for the court to state the conclusion requested and no error may be predicated upon its refusal to so do.

In 64 C.J. 1236, it is said: "* * * While correct practice requires that conclusions be stated on every issue of fact formed by the pleadings and tried by the court, it is not necessary to state conclusions on every minor question of law which may arise in the case, such as questions relating to the burden of proof or the recovery of costs, the awarding of which is provided for by statute, and in some, although not all, jurisdictions a general conclusion that judgment should be rendered for a specified party is sufficient."

Again in Central Meat Market v. Longwell's Transfer, Inc., 43 S.W.2d 616, 619, where the identical question as here presented was before the Texas Court of Civil Appeals, it is said: "The court found the ultimate issue of negligence in defendant's favor. The findings requested were merely evidentiary upon that ultimate issue. The court is not required to make findings upon mere evidentiary issues, nor is it required to file conclusions upon every minor issue of law presented by a case, such as to where the burden of proof rests."

Finding no error the judgment of the trial court will be affirmed, and it is so ordered.

SADLER, C. J., and MABRY and BRICE, JJ., concur.

BICKLEY, Justice (dissenting).

We have come to a cross-roads of opinion because of distinct differences of view as to the respective functions of the trial court and of the Supreme Court as a court of review, merely.

The majority have found the trial court in error as to the important matter of consideration for the deeds to the real property involved. They say that whatever may be said concerning the rule in Retsch v. Renehan, "We are committed to the doctrine that payment of a pre-existing debt is a valuable and adequate consideration for the transfer of property."

That the trial court was not motivated by this declared principle is apparent by its refusal to make defendant's requested finding of fact as follows: "That on the said

31st day of January, 1939, and for a long time prior thereto the defendant was a creditor of the said May McGraw and the said May McGraw executed said conveyance in payment of indebtedness due the defendant."

And by giving the finding of fact No. 16 requested by the plaintiff, to wit: "That there was no consideration *paid* by the said Michael J. Grant for the conveyance to him of the aforesaid premises; that there was no cancellation by said defendant of any written security given by the said May McGraw, or any written release by said defendant of any unsecured claim held by him against the said May McGraw." (Emphasis supplied.)

The record shows abundantly that the defendant was entitled to the finding quoted, and we should not assume that the trial court did not believe the testimony offered by the defendant in view of the fact that the court apparently refused the finding for the reason advanced by the plaintiff, that a pre-existing or antecedent debt, the extinguishment of which would constitute consideration for a conveyance could not be proved by parol evidence but must be proved by a writing of some sort, which writing must be produced and canceled and surrendered at the time of the conveyance.

There is some language in support of that view in a quotation from the writings of Mr. Pomeroy employed by this court in Retsch v. Renehan, 16 N.M. 541, 120 P. 897, relied upon by the plaintiff, but as the majority say, this is not the law in this state. But, say the majority, having found the court in a substantial error they will nevertheless proceed to investigate and determine whether there is substantial evidence to support the court's further finding that the grantor and grantee in the deeds were guilty of fraud independently of the question of consideration (if that be a finding of fact as distinguished from a conclusion of law). This the majority do and give an affirmative answer after employing what seemed to be certain badges of fraud such as absence of change of possession of the property conveyed, financial difficulties of the grantor, pendency of a lawsuit against her and certain declarations said to have been made by her. I do not find any evidence that the grantee knew anything about the grantor's alleged intention to hinder and delay her creditors except that he did know that the grantor was being sued and made inquiry of her about such suit, and when the grantor told him that it was none of his business, he failed to press the inquiry further. Whether further inquiry would have disclosed to the grantee that the grantor made the conveyance to him with the intent to hinder and delay her creditors instead of being done in a good faith effort to prefer the grantor as a creditor in consideration of obligations and promises made many years prior to the law suit, is problematical.

It is true that ordinarily, badges of fraud if convincing may afford the evidence of fraud, but it is a recognized rule

that where there exists a consideration for the transfer, the badges of fraud are repelled. See Moore on Fraudulent Conveyances, Sec. 21; 37 C.J.S., Fraudulent Conveyances, § 98; 27 C.J. p. 497, note 86; Shealy v. Edwards, 75 Ala. 411; Terrell v. Green, 11 Ala. 207; Goetter v. Norman, 107 Ala. 585, 19 So. 56; Quealy Land & Live Stock Co. v. George, 36 Wyo. 268, 254 P. 130.

It is my view that having found the court in error as to so vital a matter, the cause should be remanded to the trial court for further findings and conclusions, consistent with the enlightening view of the law as declared by this court in the majority opinion. We would thus avoid the precarious assumption that the trial court's judgment would have been the same, notwithstanding the error committed. If the trial court had found the conveyance to have been made for an adequate consideration instead of finding that there was no consideration, I have no way of knowing whether his general finding (or conclusion) of fraud would have been the same or whether the fact is that the court found fraud because he had first found that there was no consideration for the transfer. I greatly doubt whether the court would have found fraud, at least on the part of the grantee, if he had not previously found that the conveyance had been made and received without consideration. In any event, the primary duty of deciding cases rests upon the trial court and it should be given the opportunity to do so in this case after being advised as to the controlling legal principles governing the elements of consideration.

For the reasons stated, I dissent.